IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—MARCH TERM 1845.

## Ebenhardt's Appeal.

H. obtained judgment against R. then owner of three lots, Nos. 1, 2 and 3. Afterwards R. by deed conveyed lot No. 3 for $400 to S., who paid $100 and gave his note for $300 payable to R.'s order, "on account of the lien on his (R.'s) property in favour of H.," &c. After this there were three judgments obtained against R. by B., W. and P. At the time W.'s and P.'s judgments were entered there were no judgments against S.; but subsequently there were twelve entered against him. Out of the proceeds of lots Nos. 1 and 2, sold under H.'s judgment, the court allowed H. and B. the amount of their judgments, W. the balance of the fund towards his judgment, and subrogating W. and P. to the rights and interest of H. as to the lien of his judgment against the real estate of S., decreed them the amount, with interest, of the note given by S. to R. No notice was given S.'s creditors of the application for this decree of distribution, and but one appeared to contest the subrogation. Subsequently to the decree, lot No. 3 was sold by the sheriff as S.'s property, and W. and P. claimed the amount of the note out of the proceeds. Exceptions afterwards taken to the decree by two of S.'s creditors were dismissed, and, on an appeal by them to this court, the decree of substitution was reversed. SERGEANT, J., *dissenting.*

THIS was an appeal by Michael D. Ebenhardt and Charles F. Diekenschiedt from the decree of the Common Pleas of *Lehigh* county.

The facts of the case were as follows:—On the 26th April 1842, Henry Hein obtained a judgment for $1200 against John Rice, who was then the owner of three lots of ground, viz: Nos.

(1), (2) and (3). On the 26th October following, Rice, by deed which was recorded 16th March 1843, conveyed lot No. (3) to George Spinner for the consideration of $400, the receipt of which was acknowledged in the deed. Spinner paid $100, and gave Rice the following note:

" For value received, I promise to pay to the order of John Rice, on account of the lien on his property in favour of Mr Hein, due in April 1843, $300, to be paid on or before the 27th day of May 1843 in specie-paying funds.

GEORGE SPINNER.

October 21st, 1842."
(Endorsed) " Pay on Mr Hein's lien $300 within mentioned.

JOHN RICE."

There were three other judgments obtained against Rice: one by Henry Bender, November 5th, 1842, for $65.44; one by John A. Waechter, June 11th, 1843, for $103, and one by George Probst, June 21st, 1843, for $2662.37½. At the time the two latter judgments were respectively obtained, there were no judgments against Spinner. On the 11th July 1843, Pretz, Saeger & Co. obtained judgment against Rice for $987.24, on which they issued an attachment execution on the 2d August 1843, with a clause of *scire facias* against Spinner as garnishee, which was returned served same day, and on which judgment was entered against Spinner on the 8th September 1843 for $311.65. Previous to this judgment four others had been entered against Spinner, the first of which was on the 18th July 1843. On the 20th January 1844, lots Nos. (1) and (2), above mentioned, were sold under Hein's judgment against Rice for the sum of $1310. On the 2d February 1844, two judgments were respectively obtained against Spinner; one by Ebenhardt and Dickenschiedt, and one by Michael D. Ebenhardt. After these, five other judgments were entered against Spinner, the last on 20th February 1844.

On the 7th February 1844, rules were taken to show cause why Hein and Bender should not take the amount of their judgments out of the fund in court arising from the sale of lots (1) and (2); and why Waechter and Probst should not be subrogated to all the rights and interest of Hein, to the extent of their judgments against Rice. On the same day an auditor was appointed to ascertain and report the nature and amount of the liens on the real estate late of Rice, and all the facts in relation to said liens. Same day affidavit of Spinner, garnishee, was filed, stating the facts of his purchase from Rice of lot No. (3); that he paid $100 on account of the lots, and gave the note to Rice's order on account of the lien on his property in favour of Hein; that there was no balance in his hands in favour of Rice on the 2d August 1843, nor at any time since, except the balance due for the lot, and payable as above stated, and according to said note; that he had not, on that

day nor since, any goods, &c., or effects belonging to Rice, except the money due on said note, to be applied on Hein's judgment. Same day Waechter, on an affidavit that Rice had moved off to New Jersey with his family in July 1843, and had not visited Allentown or lived there since, took a rule to show cause why the writ of attachment issued by Pretz, Saeger & Co. and the service of the writ should not be quashed.

On the 29th April 1844, the auditor reported distribution of the fund arising from the sale of lots (1) and (2) to the judgments of Hein and Bender, leaving a balance of $50.96, which, together with $311.65 the amount with interest of Spinner's note to Rice, which he considered as part of the fund, he allowed Waechter and Probst on their judgments.

On the 1st May following the report was confirmed. Hein and Bender were allowed the amount of their judgments. Waechter was allowed the $50.96, the balance in the sheriff's hands, and was subrogated to the rights and interest of Hein as to the lien of Hein's judgment against the real estate of Spinner, to the amount of $68.14, the balance due on Waechter's judgment. Probst was also subrogated to the rights and interest of Hein as aforesaid, to the amount of $243.51. These two sums made up the sum of $311.65, the amount of the note and interest.

No notice was given to Spinner's creditors of the proceedings in relation to distribution of the proceeds of Rice's property, although on the hearing Pretz, Saeger & Co. contended that their attachment had attached the debt due from Spinner to Rice, so that the other judgment creditors of Rice had no claim to it; and contested the right of subrogation claimed by Waechter and Probst. No other creditor appeared or took part in the argument.

On the 8th August 1844, Spinner's property, including lot No. (3), which he had bought from Rice and which he had improved by buildings, was sold by the sheriff. This lot (3) brought $1003. On the 6th September 1844, on the petition of Michael D. Ebenhardt, setting forth " that no notice of the auditor's proceedings, or of the application for the decree of the court, was ever given to him or Spinner, or any of his judgment creditors; nor were they ever aware of these facts until the sale of the real estate of Spinner, when the above-mentioned sum was claimed by the creditors of Rice," the court permitted him to file exceptions to the auditor's report, and granted a rule on Waechter and Probst to show cause why the decree subrogating them to the interest of Hein, &c., should not be rescinded. One exception was made to the auditor's including among the assets of Rice the amount of Spinner's note, and distributing it among the creditors of Rice as part of the proceeds of his real estate. The court dismissed the exceptions and discharged the rule. From this decision Eben-

hardt and Dickenschiedt now appealed, and filed exceptions, as follows:

1. That neither the auditor nor the court had any right to proceed to dispose of the fund, as the money was not actually in court.

2. That no notice was given to the parties interested, as required by law. ·

3. That the auditor was simply appointed to ascertain the nature and amount of the liens against the premises sold, and all the facts in relation to said liens, and he undertook to distribute the proceeds and to dispose of a chose in action between other parties than those before the court. That he erred therein, and the court erred in confirming his report, and decreeing the distribution, and making the subrogation reported.

4. That it was not competent for the Court of Common Pleas, in the distribution of the proceeds of the sale of the real estate of Rice, to make a decree calculated to affect the rights of the judgment creditors of Spinner, and in effect to distribute the proceeds of the sale of the real estate of Spinner.

5. That the decree of subrogation was erroneous upon principle, even had all the parties been before the court.

6. That the judgment creditors of Rice had no superior claims in equity to the judgment creditors of Spinner, to entitle the former to the subrogation decreed to the prejudice of the latter.

This case was argued at December Term, 1844, and was now reargued by

*J. M. Porter*, for the appellants.
*Davis*, contra.

The opinion of the Court was delivered by

KENNEDY, J.—Appeal by M. D. Ebenhardt and Charles F. Diekenschiedt from the decree of the Court of Common Pleas of Lehigh county, in the matter of the distribution of the moneys arising from a sheriff's sale of the real estate of John Rice, and as it would seem also, in effect, from a like sale made of the real estate of George Spinner. The controversy in this case does not exist between judgment creditors of the same debtor, but between the judgment creditors of John Rice on the one side, and the judgment creditors of George Spinner on the other. Were it between the judgment or lien creditors of John Rice alone, where some of them, having a right to go only upon or against one fund, were seeking to be substituted to the rights of others, having a right to go upon two funds belonging to Rice, the debtor, the court might very well interpose, so that both funds might, as far as requisite, be applied to the satisfaction of both descriptions of judgments, provided no injustice should be done thereby to Rice. (1 *Story's Equity,*

*pl.* 634, 642.)   But where the parties seeking the aid of the court are not creditors of the same common debtor, they cannot claim to have the funds marshalled, in order to have a larger dividend out of one fund for those who can claim only against that.   For example, if a joint debt be due to one creditor by two persons, and a several debt be due by one of them to another creditor, and the joint creditor obtains a judgment against the joint debtors, and the several creditor obtains a subsequent judgment against his own several debtor, a court of equity will not compel the joint creditor to resort to the funds of one of the joint debtors, so as to leave the second judgment in full force against the funds of the other several debtor, unless, indeed, it should appear that the debt, though joint in form, ought to be paid by one of the debtors only, or there should be some other supervening equity.   *Story's Equity, pl.* 642; *Dorr* v. *Shaw* (4 *Johns. Ch.* 17, 20).

In the case before us, Henry Hein obtained a judgment against John Rice first, as early as the 26th of April 1842, for a debt of $1200, which became a lien on the real estate owned at the time by Rice, consisting of a lot of ground situate in Allentown, of seven acres of meadow situate in the same place, and of another lot of ground situate in Allentown, which he, on the 26th of October following, sold and conveyed to George Spinner for the consideration of $400, of which $100 was paid, and a note given by Spinner to Rice for the payment of the remaining $300 on or before the 27th May 1843; and was intended, as would appear from the tenor of the note and an endorsement thereon, to be applied towards discharging the judgment of Hein.   After this, from the 5th November 1842 to the 21st June 1843, several judgments were obtained by Henry Bender, John A. Waechter and George Probst respectively against Rice, amounting in all to a sum exceeding $2800, which became liens upon the two parcels of Rice's real estate before mentioned, which remained unsold, and were taken in execution afterwards, and sold by the sheriff on the 20th January 1844, under Henry Hein's judgment, for the sum of $1310; of which sum, after paying the costs of sale, a prior lien of $232.42 to the widow Heimbach, $919.93, the balance due on Hein's judgment, and $71.89, the amount due on Bender's judgment, there remained a residuum in the hands of the sheriff, of $53.96.

Upon this state of facts the court below, on the 1st May 1844, decreed that John A. Waechter should be substituted to the right of Henry Hein, to proceed on his judgment against John Rice, to levy, by virtue thereof, out of the lot of ground sold by Rice to Spinner, the sum of $68.14, being the balance still due on his judgment against Rice, after applying towards the payment thereof, the residuum in the hands of the sheriff; and that George Probst should be substituted also, to proceed in like manner to levy out of the same lot of ground the further sum of $243.51, these two sums being, as it was alleged, the amount of the principal and in-

terest still due on the note given by Spinner to Rice for the balance of the purchase money of the lot. At the time of making this decree, there were several judgments against Spinner for various sums, amounting in all to several hundred dollars, though none of them were obtained until after Waechter and Probst had obtained their judgments respectively against Rice. Other judgments were subsequently obtained against Spinner, and on the 8th of August 1844, his real estate, including the lot of ground he purchased of Rice, having been taken in execution, was sold by the sheriff for the purpose of paying his debts, for a sum which fell short of the amount thereof.

Now, according to the principles laid down above, which seem to govern in regard to the right of substitution, I confess I am unable to discover any clear ground upon which either Waechter or Probst is entitled to claim it in this case. It is true that they and Henry Hein were severally the creditors of John Rice, and that he was their common debtor; but then the funds against which the demands in question are made, are not the property of the same person or debtor. This, according to Lord ELDON, would seem to be necessary. In *Ex parte Kendall,* (17 *Vez.* 520), he says, "We have gone this length: if A. has a right to go upon two funds, and B. upon one, having both the same debtor, A. shall take payment from that fund to which he can resort exclusively, that by those means of distribution both may be paid. That course takes place where both are creditors of the *same person,* and have demands against *funds,* the *property* of the *same person.*" And in further illustration of the subject he adds, " It has never been said that if I have a demand against A. and B., a creditor of B. shall compel me to go against A. without more; as if B. himself could insist that A. ought to pay in the first instance; as in the ordinary case of a drawer and acceptor, or principal and surety; to the intent that all the obligations arising out of these complicated relations may be satisfied; but if I have a demand against both, the creditors of B. have no right to compel me to seek payment from A., if not founded upon some equity, giving B. the right for his own sake to compel me to seek payment from A." Now apply the principle here advanced by Lord ELDON, as between Hein and Rice; and what colour, or even shadow of equity, I would ask, had Rice to say to Hein, that he must or ought to go first against Spinner or the property of Spinner for any portion of his judgment against Rice? There was no privity of contract whatever between Hein and Spinner, though there was between Spinner and Rice. Spinner was debtor to Rice, and Rice was debtor to Hein; and this seems to be the whole extent of the relationship that existed between them. But surely it has never been thought that a debtor who is the creditor of others, has the slightest colour of equity on his part to demand of his creditor that the latter shall proceed in any form or upon any terms and conditions whatsoever, first, to

recover his claim from the debtors of the former. There would, therefore, seem to be no ground for substitution in such case, and I am not aware of any, in which it has ever been made. Rice is not the owner of both funds here, so as to entitle his junior judgment creditors to claim substitution upon that ground; neither can he be said to be a surety merely for the payment of the judgment or any part thereof, against him in favour of Hein, for the payment of which Spinner is bound as principal; and therefore he or his creditors cannot set up a claim to substitution upon the principle which governs in favour of a surety. The case, indeed, does not present to my mind, under any view that can be taken of it, sufficient ground to support the claim to substitution that has been made; but on the contrary, as it appears to me, there are insuperable objections to its being allowed. The creditors of Spinner are affected by it, whose claims to the fund in contest (that is, to the lot of ground sold by Rice to Spinner, or otherwise to $311.65 of the moneys arising from the sale made thereof by the sheriff) are of a legal character, and, for aught that appears, founded upon as much equity as those of the creditors of Rice. The claims, however, of the latter can at most be only said to be equitable, and upon this ground, if there were no other, would have to be postponed to the former. The decree of substitution, made by the court below in favour of John A. Waechter and George Probst severally, as to the $311.65, in the proportions thereof therein mentioned, is reversed; and the costs accrued thereon, as also those which have accrued on the appeal, are directed and ordered to be paid by them.

Sergeant, J., *dissenting.*—The exercise of the power of substitution is often necessary to do justice between contending claimants, and has accordingly been applied in practice by this court, on chancery principles. In the present case it is imperiously demanded to prevent a result which would be unfair and inequitable, were the mere legal powers of the parties rigidly carried out under the forms of our ordinary proceedings. Hein has a judgment against Rice which binds his lands. Rice afterwards sells a portion of the land thus bound to Spinner. Spinner, therefore, buys it subject to this lien, and his creditors can be in no better situation. This is the legal position of the parties, and by it Hein might at law resort to the land still owned by Rice, or that owned by Spinner, at his own election. There might, however, be circumstances which would operate in equity to compel Hein to limit his demand to the land still owned by Rice. But all these are put aside here by the express agreement of Spinner, as shown by his note to Rice, that the $300 of the purchase money was to be paid on account of the lien to become due to Hein in April 1843. This was an express engagement by Spinner that the land he purchased should pay off the $300. It cannot, therefore, be pretended that

[Ebenhardt's Appeal.]

it should be thrown on any other land remaining in Rice; and as between Rice or his creditors and Spinner or his creditors, I entertain no doubt of the liability of Spinner's lot, No. 3, to pay this sum. I consider the case, then, exactly that put by Lord ELDON in *Ex parte Kendall* (17 *Vez.* 520). " Hein has the right to go upon two funds (Rice's remaining land and Spinner's lot No. 3). Waechter and Probst have the right to go upon only one (Rice's remaining land). Having both the same debtor (Rice), Hein shall take payment from that fund to which he can resort exclusively (lot No. 3), that by such means of distribution both may be paid. That course takes place where both are creditors of the same person (Rice), and have demands against funds the property of the same person (Rice)."

Decree reversed.