*Twenty-first Judicial District.*

### In the Court of Common Pleas of Schuylkill County.

## FRANK KEHLER *v.* J. R. MILLER & D. MILLER.
## ASHLAND SAVING BANK *v.* DANIEL MILLER.

1. Building fund, loan and land associations, under the provisions of the 6th section of the act of 12th April, 1859, can enforce the contracts of their members relative to premiums, fines and interest incurred since the passage of the aforesaid act.

2. The seizure of goods in execution, and the setting aside of $300 worth of property for each defendant on a judgment containing a waiver, is a satisfaction of the judgment, *pro tanto* so far as the rights of junior creditors are concerned.

3. When one judgment creditor has a waiver in his judgment, and another judgment creditor has no waiver, the creditor without a waiver can compel the creditor with a waiver to resort first to the exempted property for payment.

4. When a creditor has access to two funds, equity will restrict him to that fund which the other creditors cannot reach.

**Exceptions to Auditor's Report.**

Opinion delivered 11 March, 1872, by

WALKER, J.   The principal exceptions to the confirmation of this report, involve the determination of these questions :

1st. Whether the provisions of the 6th section of the act of the 12th April, 1859, (P. L. p. 546,) relative to mutual saving funds and building associations are invalid, so far as the collection of the premiums, fines, and interests of the members of the association is involved.

2d. Whether the seizure of goods in execution and the setting aside of personal property to the value of $600, for the defendants by the plaintiff, when his judgments contained a waiver of the $300, is a discharge of the judgment, *pro tanto,* so far as the rights of junior creditors are concerned.

The whole case turns upon the ruling of the auditor upon these points, and which we will proceed to consider consecutively.

The money in court for distribution is $4,045.37, being the proceeds of the sale of the defendant's real estate, and the auditor has awarded to the Anthracite Saving Fund Association the full amount of its judgment, composed of premiums, fines, and interest secured on a bond of 2d February, 1870, amounting to $804.25, and this is alleged by junior creditors as being erroneous.

They contend that as the act of 8th May, 1855, (P. L. p. 519,) which declares "that premium given for preference of loan shall not be 'deemed usurious," has in some respects been declared unconstitutional ; that therefore the 6th section of the act of 12th April, 1859, is in the same category. But only so far as that act had a retroactive effect has it been declared unconstitutional.   Bechtold v. Brehn, 2 Casey, 269.

And it was "interpreted as saving them from the penalties of usury without sustaining past or future contracts so far as to enforce their usury." Houser v. Building Association, 5 Wr. 478.

The Supreme Court held that under that act the association could not enforce such contracts.

But the act of 12th April, 1859, (intended to remedy this deficiency,) not only provides that premiums, fines, and interest should not be usurious, but it expressly enacts, "*that the same may be collected as debts of like amount are now collected.*"

The difference in the phraseology is most apparent. One declares that premiums shall not be usurious so far as to exempt them from the penalties of usury without authority to collect; while the other declares that in addition to being exempt from punishment, they shall have the power to collect these premiums, fines, and interest, as debts of like amount are now collected.

This is as binding upon every member of the association, as are the provisions of the act of the 28th May, 1858, (P. L. 622,) regulating the rate of interest for persons *outside* of the association.

These acts are not in conflict with each other.

The act regulating interest the Supreme Court say, "is the law for all the people of the Commonwealth, except for those who may choose to unite to the number of ten or more, into an association called a saving fund, loan, land, or building, and then the act of 12th April, 1859, says they may charge and receive as high interest as they can get, according to the necessity and poverty of the borrower." Premium Fund Association's Appeal, 3 Wr. 156.

They have also held in Reiser v. Wm. Tell Association, 3 Wright 137, that the 8th section of that act is unconstitutional so far as it is expository.

In the present case, the Anthracite Saving Fund Association was established long after the passage of the act of 1859, and therefore cannot be retroactive.

It cannot be expository, for that decision applies only to the 8th section of that act.

The Legislature has entire control over the rates of interest, and its power has never been questioned, to grant to chartered companies the authority to pay seven per cent. on the bonds, and even to sell those bonds below par.

There is nothing in the letter or spirit of the Constitution, to prohibit this, and consequently it cannot be unconstitutional. Such is the act of 25th February, 1856, relative to railroad and canal companies. Such is the act of 21st May, 1857, relative to merchants, &c., not residing in the State. The statute books are full of these acts.

We cannot, therefore, say in the teeth of the plain language of the act of 1859, that a court of law will not regard it. If these premiums, &c.,

can be collected, why should not in this case the proceeds of the sale of defendant's real estate be applied to the payment of the plaintiff's judgment?

We therefore think the auditor was right in awarding to the Anthracite Saving Fund Association, the amount of its claim.

2d. The auditor's reports and the record show the following facts :

That Frank Kehler obtained two judgments against the defendants for nearly $2,000, and that each judgment was founded upon notes containing a waiver of the $300.

That writs of *fi. fa.* were issued upon these judgments on 21st November, 1870, and the Sheriff levied upon the personal property of the defendants.

That on the 5th of December, 1870, Kehler made an agreement with Jacob Miller to set aside for him $300 worth of the property bound by the lien of the levy, if he, Miller, would give him an exemption note to secure the plaintiff's claim for another debt not already secured.

He also agreed to let Daniel Miller have $300 worth of property.

On the 7th December, 1870, the sheriff was notified by the plaintiff in writing to set aside for the defendants $600 of the property levied upon, which he accordingly did. The remainder of the property was then sold by the sheriff, and after deducting costs, the sum of $878 was left, and was applied to the plaintiff's judgments on account.

The sale of the personal property was in December, 1870. On 3d March, 1871, another writ of *fi. fa.*, 215 March Term, 1871, was issued by the Ashland Saving Bank against Daniel—*containing* no *waiver*—was placed in the hands of the sheriff and return made, " Real Estate sold under Kehler's ven. exp.," and "nulla bona" as to the debt. At the time of the sale of the personal property, Kehler knew that the defendants were greatly embarrassed, and that their creditors were pressing them. On 4th March, 1871, the real estate of the defendants was sold, the proceeds of which were paid into court.

The auditor appointed to distribute the fund, from the above facts and other facts in the case, held that the action of the plaintiff in the premises was a discharge of his judgments *pro tanto,* as far as the rights of junior creditors are concerned, and therefore deducted the $600 from the amount of plaintiff's judgments.

Hence the exception : Was there error in this ? We shall proceed to discuss this point.

In one of the earliest cases, Hunt v. Breading, 12 S. & R. 37, it was held "that a judgment creditor who has taken in execution the goods of the debtor, cannot afterwards discharge them from the execution and continue his judgment in force as to the land of the debtor."

This was followed by Dean v. Patton, 13 S. & R. 341, and by Duncan v. Harris, 17 S. & R. 436; all of which held the same doctrine. It

was afterwards held in Cummin's Appeal, 9 W. & S. 73, "that a levy of personal property upon an execution does not take away the lien upon the real estate, if the goods levied upon were not removed or sold by the constable." Judge Kennedy then held that "if the plaintiff had done any act to the prejudice or injury of subsequent lien creditors there might be some ground for the position assumed on their behalf."

In Davids v. Harris, 9 Barr 501, the question arose as to the presumption of the payment of the judgment, and the rights of third parties were not called in question.

In Cathcart's Appeal, 1 Harris 421, the general rule is reiterated, "that a seizure of goods in execution to the value of the debt, whether they be sold or not, satisfies the judgment." And it was also said that the rule is utterly inapplicable when goods have been left in the possession of the defendants and he has been permitted to use them, because nothing has been done by the plaintiff to prejudice the rights of subsequent lien creditors. And it is further ruled by the court in that case, "that one who has levied upon the chattels of his debtor, will not be suffered to divert the levy to the payment of a posterior judgment in detriment of an intermediate lien." In Morrison & Steel v. Hoffman, et al., 1 Barr 13, it was held that in the absence of proof showing collusion between plaintiff and defendant, that as the property was left in the possession of the defendant and used by him, and as subsequent creditors were not hindered, they might sell the same on their writs and apply the proceeds to their judgments. So in Taylor's Appeal, 1 Barr, 390, the same doctrine is maintained.

Chief Justice Gibson, who delivered the opinion of the court, says : "No more was determined in Hunt v. Breading, 12 S. & R. 37, than that an execution creditor, whose levy has kept others at bay, shall not abandon it and assign his judgment for the consideration of payment as an existing lien on the debtor's land ; had he been deprived of the fruit of his execution by anything else than his own act, the consequence would have been different."

In Lyons v. Hampton, 8 Harris 46, it was further held, "*that the seizure of goods in execution is a discharge of the judgment, whether the goods be sold or not, so far as the rights of other creditors are concerned,*" except where the plaintiff is deprived of the fruit of his levy without any fault of his own.

The rule is thus broadly and explicitly stated, and the cases of Hunt v. Breading, of Dean v. Patten, and of Duncan v. Harris are fully sustained. The court says : "It strengthens our confidence in the justice of the country when we see a principle so just in itself and so beneficial in its general results, sternly and constantly enforced ; every relaxation of the rules, in view of their supposed hardship of particular cases, is but opening the door to the most dangerous abuse of the process of the law."

This was followed by Campbell, Bredin & Co.'s Appeal, 8 Casey, 88, upon which the plaintiff chiefly relies, and which at first blush would seem to be in conflict with the previous decisions, but when closely examined are in harmony with them, when the facts of that case are considered. Whenever there is a conflict of decisions, the Supreme Court have held that their ruling has been upon the facts upon the particular case decided.

In the case last cited, Judge Strong admits the general law, as before stated, but holds that the rule is inapplicable when the goods are left with the debtor. Although he enlarges the exception to the rule so as to sustain his argument, the facts upon which that decision rests are altogether different from the present case, and the opinion outside of the facts may be regarded as the dictum of the judge.

McCoy obtained two judgments for something over $2,000, against Wolf; Campbell, Bredin & Co., were the next junior creditors, McCoy issued a *fi. fa.* and sold Wolf's personal property for $692.43, but received none of the proceeds of the sale, and the goods were left in the debtor's hands. Afterwards McCoy purchased a mortgage debt of Reis to Wolf, and took an assignment of it; the consideration of the assignment was that he should give a credit upon each of the judgments to one-half the amount without any credit or abatement on account of the sale on the *fi. fa.* It was objected to that the proceeds of the sale of the personal estate were not charged to McCoy in the distribution. But McCoy had already credited more than that amount on the judgment upon which the *fi. fa.* was issued, and Judge Strong held "*it was immaterial whether he be charged in direct terms or not, if he be in effect, and if the appellants, who are the next junior creditors, have the benefit of such deduction from McCoy's judgment.*"

The appellants were not prejudiced by that distribution, which was really in their favor, and consequently the decision of the Supreme Court was made upon these facts.

In the case now before us, Kehler knew at the time of the sale of the personal property, that the defendants were very much embarrassed. He knew that their creditors were pressing them; he had their goods within his grasp with a waiver in his judgments, and yet he agreed with one of them for a consideration, to set aside the goods for them.

Now he claims the amount out of the proceeds of the real estate.

Did he do nothing in all this to hinder, delay, and prejudice junior creditors? Did he not in reality by this course prevent subsequent creditors from seizing the goods set apart?

The record shows that the Ashland Saving Bank issued a *fi. fa.* to March Term, 1871, against the defendants, upon a judgment which contained no waiver, and the return of the sheriff to that writ was, Real estate sold on Kehler's writs and "nulla bona" as to the debt.

The goods certainly were out of the reach of the creditor, for the re-

turn shows that the sheriff could find no goods to make a levy—and he is presumed to have done his duty.

The record also shows that Boleck and Reed's judgments also contained no waiver of the $300, and the law is, that where some of the judgments are without a waiver, the holder can compel the judgment creditor with a waiver to resort first to the exemption fund for payment. Pittman's Appeal, 12 Wr. 315 ; Shelley's Appeal, 12 C. 373.

If it be objected to that the rule applies to judgment creditors and not to creditors whose claims have not been reduced to judgments, then the answer is that the record shows at the time of the sale of the personal property, that Reed's judgment, though unrevived, was still good against the defendants, and would bring the plaintiff within the rule.

But there is another old and well-established principle of equity which should be considered here in determining this question, and that is, *when a creditor has two funds to draw upon, he will be restricted to that fund which the other creditors cannot reach.*" Bruner's Appeal, 7 W. & S. 269 ; Hasting's Case, 10 Watts 303 ; Ebenhardt's Appeal, 8 W. & S. 331.

Kehler, then, by virtue of his execution had a lien upon the personal property of his debtors, and by virtue of his judgment, he had a lien upon their real estate.

He is the only one of all the defendants' creditors who had this superior equity, and is it too much to require him to resort to that fund to which the other creditors had no access ?

We hold, then :

1. That the acts of the plaintiff, Kehler, in the premises, were prejudicial to the rights of the other creditors, and therefore impaired the priority of his judgment to the amount of the value of the goods set apart.

2. That the plaintiff having a waiver in his judgment, while some of the other creditors had none, he is by law restricted first to the exemption property for payment.

3. That the plaintiff having access to two funds, equity will require him to resort to that fund which the other creditors cannot reach.

The auditor was therefore right in awarding the fund for distribution in the manner set forth in his report.

Exceptions overruled and report confirmed.

*Geo. D. Haughawout, Esq., Lin Bartholomew, Esq.,* and *Hon. Myer Strouse,* for exceptants.

*Marr & Bro.,* and *John W. Ryon, Esq.,* contra