MAY TERM, 1881, No. 25.                    JUNE 7TH, 1881.

## Levi Conser's Appeal.

1. A judgment creditor whose judgment is a lien upon land owned by the debtor, but was obtained subsequent to the sale of other land by the debtor, upon both of which tracts a prior judgment is a lien, is not entitled as against the vendee upon the payment of the prior judgment out of the proceeds of a sheriff's sale of the first mentioned land to be subrogated to the rights of the prior judgment.

2. *Semble* that this would be the case though the vendee had agreed to apply the purchase-money to the payment of the prior judgment.

3. There is no privity of contract between the vendee and the subsequent judgment creditor.

4. The equitable principle that when a creditor has a lien on two funds in the hands of the same debtor, and another creditor has a lien only on one of the funds, the former may be compelled to levy his debt out of the fund to which the latter cannot resort, does not apply except in cases where both funds are in the hands of the common debtor of both creditors.

5. Ebenhardt's Appeal, 8 W. & S., 327, followed.

APPEAL of Levi Conser from the decree of the Court of Common Pleas of *Clinton County*.

On the 24th of May, 1875, a judgment was entered upon a single bill for $1000 against A. B. Conser in favor of D. K. Heckman.

On the 30th of June, 1879, Artman, Dillinger & Co., and Smith & Seltzer, presented petitions for a rule upon Levi Conser, to show cause why the petitioners should not be subrogated to the rights of D. K. Heckman in the above judgment. The Court below granted the rule, and from the testimony taken upon it the following facts appeared:

The above judgment was given as collateral security for the payment of a note drawn by A. B. Conser to the order of D. K. Heckman and by him indorsed to J. C. Motz & Co. At the time of the entry of this judgment, A. B. Conser was the owner of two pieces of real estate upon which the judgment was a lien. On the 19th of June, 1875, A. B. Conser sold to Levi Conser by articles of agreement one of these pieces of land for the consideration of $3400, payable in instalments. By a subsequent agreement, dated June 21st, 1875, it was stipulated between A. B. Conser and Levi Conser that the latter was to apply the instalments of purchase-money as they came due, after the first payment of $400 was made, to the payment of the Heckman note, held by J. C. Motz & Co., and after that was paid then to other indebtedness of said A. B. Conser specifically set forth therein.

On the 21st of December, 1875, John A. Marshall obtained a judgment for $706 against A. B. Conser, which became a lien on the piece of land not sold to Levi Conser. On the 8th of January, 1876, Smith & Seltzer obtained a judgment

against A. B. Conser for $211.88, and on the 24th of January, Artman, Dillinger & Co. obtained a judgment against him for $105.02. Both of these last-mentioned judgments were liens on the piece of land not sold to Levi Conser. An execution was issued upon the judgment of John A. Marshall, and the piece of real estate of the defendant on which that judgment was a lien was levied upon and sold by the sheriff for $890. The auditor in distributing the fund arising from the sale awarded to the judgment of D. K. Heckman, held by J. C. Motz & Co., the unpaid balance of $288.45, to the judgment of John A. Marshall $464.67 in full, and to the judgment of Smith & Seltzer $50.93. The judgment of Artman, Dillinger & Co. received nothing.

Levi Conser testified as follows:

"Question. Was the application of the payments as set forth in Exhibit 'C' (the agreement of June 21st, 1875) in any way changed by you and A. B. Conser?

"Answer. It was. At the time I bought the property mentioned in Exhibit 'B' there was a judgment on that property in favor of David Schrack, which was not taken into consideration at the time of the purchase of said property; it was a lien against the property because the consideration of that judgment Dr. Conser should have paid; A. B. Conser moved to Jersey Shore in June, 1875; he calculated to get so much money out of Dr. Conser as would satisfy the Schrack judgment; he could not get the judgment of Dr. Conser, and I paid it in 1876 or 1877 to David Schrack, part to him and part to his executors, paid about $260. That deviation was by mutual consent between A. B. Conser and myself. I paid A. B. Conser more than the Schrack judgment. I paid S. B. Snook about $60, paid the last of it last week. There was an understanding that I should pay, or rather I assumed it. . . . .

"Q. Is there any balance coming to A. B. Conser of this purchase-money after taking out the payments you have made and those you have agreed in Exhibit C?

"A. There is not."

Smith & Seltzer and Artman, Dillinger & Co. asked to be subrogated to the rights of D. K. Heckman, in his judgment, to the extent that it was paid out of the sheriff's sale, upon the ground that Levi Conser, having obligated himself to pay said judgment out of the purchase money of the piece of real estate sold to him by A. B. Conser, and on which the judgment was a lien when he purchased, is not entitled to have said real estate discharged from the lien of said judgment by the sale of real estate of A. B. Conser, upon which alone the judgments of the petitioners were liens.

The Court below made the rule absolute, and subrogated the petitioners to the rights of Heckman to the extent of $288.45. Levi Conser excepted, and assigned this decree as error.

*C. S. McCormick* for appellant.

The entry of the judgments after the conveyance of the land to appellant cannot affect him with record notice of them: Horning's Appeal, 9 Norris, 391.

Subrogation which works injustice to one who has acquired a right prior to that of the parties who ask to be subrogated, will not be allowed. Unless A. B. Conser has some equity which gives him the right for his own sake to compel payment of the Heckman judgment out of the Levi Conser property, these petitioners have none: Ebenhardt's Appeal, 8 W. & S., 332; Lloyd *v.* Galbraith, 8 Casey, 108; McDevitt *v.* Hays, 20 P. F. Smith, 376.

*E. P. McCormick* and *Merrill* for appellees.

Where a creditor has a lien upon two funds belonging to one debtor and another creditor has a subsequent lien upon only one of them, the former is under obligation to exhaust first the fund upon which he has an exclusive lien before he can resort to the other.

If the paramount creditor resorts to the doubly charged fund or property the junior creditor will be substituted to his rights and will be satisfied out of the other fund to the extent to which his own may have been exhausted: Ramsey's Appeal, 2 Watts, 228; Delaware & Hudson Canal Company's Appeal, 2 Wr., 512.

The opinion of the Court was delivered, October 3d, 1881, by STERRETT, J.:

The question is whether the facts in this case were sufficient to justify the Court in making the order of subrogation.

In May, 1875, a judgment was entered against A. B. Conser in favor of D. K. Heckman for $1000, as collateral security for the payment of a note made by the former to the order of the latter, and by him indorsed to the order of J. C. Motz & Co. That judgment became a lien on two parcels of land then owned by the defendant, A. B. Conser. Within a month thereafter he conveyed one of them to his father, the appellant, for the consideration of $3400, payable in several instalments extending over a period of three years. Shortly after the sale an agreement was entered into between the vendor and vendee, by which the payments

were to be applied, first, to the note above mentioned, and then to the note held by the Lock Haven National Bank, etc., as therein specified. That agreement was executed on June 21st, 1875, three days after the date of the conveyance from the son to his father. In December following John A. Marshall obtained judgment against the son, A. B. Conser, for $700, and on January 8th and 25th, 1876, Smith and Seltzer, and Artman, Dillinger & Co., the appellees, respectively obtained judgments against him, the former for $211.88, and the latter for $105.02. The three last-mentioned judgments in their order became liens on the remaining piece of land, and, by virtue of an execution issued on the Marshall judgment, the same was sold by the sheriff for $800, which was distributed as follows, to wit: $288.45, balance in full to the Heckman judgment; $464.67 to the Marshall judgment, debt, interest, and costs; and the residue to the Smith and Seltzer judgment on account, leaving the balance of the latter and the whole of the Artman, Dillinger & Co. judgment unsatisfied. These two creditors then petitioned the Court for an order subrogating them respectively to the rights of Heckman in his judgment to the extent that the same was paid out of the proceeds of the sheriff's sale. In support of the application it was urged that it would be inequitable to take part of the fund, on which alone petitioners had a lien, and apply it to the satisfaction of the balance due on the Heckman judgment, which Levi Conser, the appellant, had agreed to pay out of the purchase-money of the lot conveyed to him. On the other hand the application was resisted by appellant on the ground that there was no equity to support the subrogation, and that having paid the whole of the purchase-money of the lot conveyed to him, the lien of the judgment against his lot should not be preserved by an order of subrogation. The allegation that the purchase-money was fully paid was disputed; but aside from that the appellees had no right to enforce the judgment against land which appellant had acquired before they obtained their judgment against his vendor. There was no privity of contract whatever between them and appellant, though there was between him and A. B. Conser. If appellant was indebted to the latter that indebtedness was the subject of attachment in execution at the suit of A. B. Conser's creditors. Nor were the appellees in a position to successfully invoke the equitable principle that when a creditor has a lien on two funds in the hands of the same debtor and another creditor has a lien only on one of the funds, the former may be compelled to levy his debt out of the fund to which the latter cannot resort; or, what is tantamount thereto, if the former takes his money

[Albert *et al. v.* Frick.]

out of the fund on which alone the latter has a lien, he may to that extent be subrogated to the rights of the former as against the other fund. This equitable rule does not apply except in cases where both funds are in the hands of the common debtors of both creditors, which is not the case here: *Ex parte* Kendall, 17 Vez., 520; Ebenhardt's Appeal, 8 W. & S., 327; Lloyd *v.* Galbraith, 8 Casey, 108. In one of these cases the principle applicable to a state of facts similar to the present case is fully discussed. A judgment had been obtained against a debtor who then owned three several tracts of land. He afterwards sold one of them and took a note for part of the purchase-money, coupled with an agreement to pay the same on the judgment. Subsequently other judgments were obtained and became liens on the two remaining tracts, which were then sold on an execution issued on the first judgment, and the proceeds applied to payment of it in full. The junior judgment creditors then obtained an order subrogating them to the rights of the first judgment creditors so far as to allow them to collect a sum equal to the purchase-money of the tract sold by their debtor, but this Court held, on the principle above stated, that they were not entitled to the order, and it was accordingly reversed: Ebenhardt's Appeal, *supra.*

We are of opinion that the appellees did not bring themselves within the equitable rule recognized in the cases above cited.

The order of June 29th, 1880, is reversed and set aside, and the rule to show cause, etc., is discharged.