## The Pennsylvania Co. for Insurances on Lives & Granting Annuities v. Balcyn B. & L. Assn.

*Smillie & Bean,* for plaintiff.

*Fox & McTighe,* for defendant.

KNIGHT, P. J., October 29, 1937.—The statement avers the following facts:

On March 16, 1931, defendant executed a promissory note, payable on demand, to The Merion Title & Trust Company, for $100,000, which note was transferred by endorsement, without recourse, to the plaintiff. At various dates between April 4, 1931, and July 24, 1934, there were payments made on the note, reducing it to $7,500. The plaintiff, averring that it is a holder in due course of the obligation, brings this suit to recover the balance of $7,500 with interest.

The affidavit of defense admits the execution of the note, and that plaintiff is the holder in due course thereof; it admits payments of $92,500 on account of the note, but denies that it owes the plaintiff the balance, for reasons set forth under the head of "new matter" in the affidavit. From this new matter, and the supplemental affidavit of defense, the following relevant facts are gleaned:

On March 16, 1931, when it endorsed the note without recourse to the plaintiff, Merion executed a written contract, whereby it agreed to repurchase the note from the plaintiff company upon demand, and also guaranteed that interest would be paid on the obligation at six percent, and that the principal would be reduced by payments of not less than $7,500 every 30 days.

Between March 17, 1931, and September 10, 1931, defendant paid to Merion $50,000 on account of the note. These payments were made by defendant without knowledge that Merion had negotiated the note to the plaintiff company.

On October 28, 1931, Merion closed its doors, and was taken over by the Secretary of Banking. At the time Merion closed, it owed to the plaintiff company $1,225,000 on notes, secured by collateral of the approximate value of $2,212,525.87. The plaintiff company, in proceedings relative to the account of the receiver of Merion, claimed that it held this collateral not only as security for the notes, but as security for any other obligations of Merion due to it.

On November 4, 1933, the receiver of Merion entered into an agreement with the plaintiff company, by the terms of which the receiver compromised all liabilities of the defunct bank to plaintiff, for the sum of $150,474.69. Later it was found that a $35,000 item was overlooked, and a supplemental agreement was approved by this court, whereby the receiver of Merion took over the $35,000 loan, and secured the collateral accompanying the same, whereupon the plaintiff company released Merion from further claim.

At the time Merion closed, the defendant had on deposit with it the sum of $15,446.08, part of which was applied as a set-off to other indebtedness of the defendant to Merion, leaving a balance in the deposit account of $5,-077.19. Defendant has offered to plaintiff its check for $2,422.81, and an assignment of this deposit, in full payment of the plaintiff's claim. The plaintiff company had notice and knowledge of the deposit of defendant in the closed bank before it made the settlement with the receiver, as heretofore stated.

Defendant takes the position that it was the duty of the plaintiff company to collect the balance of defendant's note from the receiver of Merion, either by enforcing the

written agreement to repurchase or by asserting a claim against the collateral of Merion in its possession.

If this were done, it is contended, plaintiff would have returned the note to the receiver, and in the hands of the receiver defendant could set off its deposit balance against any claim of the receiver on the note.

Whether plaintiff was under a legal duty to so act is the question now before us.

So far as the written agreement to repurchase is concerned, we find no merit in defendant's contention. This was not a guaranty of the principal of the note; it was an understanding to repurchase the same upon demand; the only guaranty was of six percent interest and periodical reductions of the note.

We do not think this agreement is inconsistent with the endorsement "without recourse". It was a collateral arrangement, by which plaintiff could have required Merion to repurchase the note, but on the note itself plaintiff has no claim against Merion. The allegation that this procedure was adopted to deceive the bank examiners, even if true, is a matter between the Banking Department and the officers of the banks involved; it cannot help defendant.

It is obvious that the agreement to repurchase is worthless against the receiver. It would be but a general claim against the closed bank, which can pay but a small percentage of the preferred claims held by its depositors.

Turning now to the collateral, we find the pleadings silent as to the amount of collateral, if any, returned by plaintiff to the receiver. The value of the collateral held by plaintiff at the time of the closing of Merion is given, but what portion of this was returned is not stated. True, paragraph 14 of the affidavit recites paragraph 7 of the petition, to compromise the overlooked $35,000 item, and leave is asked to pay the same and secure the collateral accompanying it. The value of this collateral, and whether it was the property of Merion, or was deposited by the

maker of the note (the maker of the note is not given), is also not stated. It is perhaps only fair to assume, however, that the plaintiff returned to the receiver collateral of a value in excess of the balance due on the defendant's note.

It is well settled that on a suit on a note, an affidavit of defense averring that the holder has collateral, upon which he has failed to realize, is insufficient to prevent judgment: The Historical Publishing Co. v. Hartranft, 3 Pa. Superior Ct. 59.

This would seem particularly true, where, as here, the defendant is the maker of the note, and the collateral was deposited by an endorser.

What right has the maker of a note, under the circumstances of this case, to demand that the endorser's collateral be taken to relieve it, the principal debtor?

The defendant urges upon us the equitable doctrine of marshalling of assets: that is, where one creditor has a right to two funds, and another creditor to only one fund, the first may be compelled in equity to levy his debt out of the fund to which the other cannot resort.

In practice at least, this doctrine seems to be applied only to liens on real estate. This principle does not apply where both funds are not in the hands of a common debtor of both creditors: Ebenhardt's Appeal, 8 W. & S. 327; Lloyd et al. v. Galbraith et al., 32 Pa. 103.

Here, the collateral was not in the hands of the Merion, or its receiver.

It seems, also, that this principle is worked out in practice by permitting the creditor with the right to resort to two funds to collect from either, and then subrogating the other creditor to his rights in both funds: Ramsey's Appeal, 2 Watts 228.

Applying this would mean that the defendant should pay the note, and be subrogated to any rights that the plaintiff had in the Merion collateral, by reason of the agreement pertaining to the note.

We are of the opinion that the equitable doctrine of marshalling assets does not apply to this case, and even if it did, it, the plaintiff, must prevail in the present rule.

The defendant relies strongly on a line of cases both in this State and other jurisdictions, of which In re Hamilton Trust Co., 17 D. & C. 633, is a fair example. We quote from the syllabus of that case:

"1. A depositor in a trust company of which the secretary of banking has taken possession on the ground of insolvency, upon paying in full the amount of a note given by him to the trust company to secure a loan, to the bank with which it was hypothecated as part of the collateral security for a series of loans to the trust company, may require repayment by the secretary of banking, out of the proceeds of the collateral returned to the trust company by the bank after repayment of its loans, of a sum equal to the amount of his deposit, so as to give effect to his right of set-off existing at the moment of insolvency of the trust company."

It will be noted that, in all these cases, the question arose between the receiver of the closed bank and its depositor; the right of the holder of the hypothecated notes to recover from the makers was never questioned; in fact, in several cases, the pledged bank refused to permit the maker of the note to offset his deposit. See Hall v. Burrell, 22 Col. App. 278, 124 Pac. 751, and Powell v. Hood ex rel., 211 N. C. 137, 189 S. E. 483.

It will be further noted that in all these cases the makers of the notes, by paying them to the bank with which they were hypothecated, relieved the collateral to the extent of the money paid.

The tenor of all the decisions is that neither the receivers of the closed banks, nor their depositors, had any equitable right to this new money.

In the present case, the defendant must pay the $7,500 to bring itself within the doctrine of these cases.

In this opinion, we have assumed that the plaintiff had a right to assert a claim against the Merion collateral, by reason of the agreement it held in reference to the note.

Whether it had such legal right, we do not now decide. We are of the opinion, however, that even if the plaintiff had a legal right to a claim against the collateral, it was under no legal duty to assert it. It held as a good faith holder for value the defendant's unconditional promise to pay, and that promise the defendant cannot avoid, whatever may be its rights as against the receiver of the closed bank.

And now, October 29, 1937, the questions of law raised in the answer of the plaintiff to the new matter contained in the affidavit and supplemental affidavit of defense are decided in favor of the plaintiff, and the rule for judgment for want of a sufficient affidavit of defense is made absolute, and judgment is directed to be entered for the plaintiff and against defendant, for the sum of $7,500, with interest thereon from July 31, 1936, at 5½ percent, or, a total of $8,014.14.