**Michael A. McKNIGHT, Plaintiff,**

v.

**SCHOOL DISTRICT OF PHILADELPHIA, Floyd W. Alston, David W. Hornbeck, Germaine Ingram, Jackie B. Sparkman, John L. McLees, Marjorie H. Adler, George Cammorota, Henry Parks, William Robinson, Andrew M. Rosen, Gaeton Zorzi, E.V. McLean, Clifford James, Kelly Klak and James Plummer, Defendants.**

**Civil Action No. 00–573.**

United States District Court, E.D. Pennsylvania.

July 25, 2000.

Michael A. McKnight, Philadelphia, PA, pro se.

Michael J. Feinberg, School District of Philadelphia Law Dept., Philadelphia, PA, for Defendants.

### MEMORANDUM

ROBERT F. KELLY, District Judge.

Presently before the Court is the Motion of all Defendants except James Plummer to Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Michael McKnight ("Plaintiff"), proceeding pro se, brings this action against his former employer, the School District of Philadelphia ("School District"), various employees of the School District and a former student under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA") for alleged wrongful termination. 42 U.S.C. § 2000e, *et seq.;* 43 Pa.C.S.A. § 959, *et seq.* In addition, Plaintiff seeks damages under The Racketeer Influenced and Corrupt Organizations Act of 1984 ("RICO") and Pennsylvania law. 18 U.S.C. § 1961 *et seq.* For the reasons that follow, the Defendants' Motion will be denied in part and granted in part.

## I. FACTS.

Plaintiff was employed as a teacher by the School District from September, 1976, through December 17, 1997, when he was

suspended without pay and subsequently discharged on March 20, 1998. From 1990 through March 20, 1998, Plaintiff was assigned to the Daniel Boone School ("Boone"), a Remedial Discipline School. Plaintiff was arrested on November 20, 1997, and charged with sexual assault and other crimes allegedly committed in the Plaintiff's home against an eighteen year-old former student. He returned to work on December 8, 1997, and was temporarily reassigned to an office job pending the outcome of an investigation by the School District. An investigatory conference was held on December 17, 1997, which Plaintiff attended, accompanied by his Philadelphia Federation of Teachers ("PFT") union representative.[1] Plaintiff was subsequently suspended without pay on December 17, 1997, and applied for unemployment compensation on December 21, 1997. On January 8, 1998, he appeared at a preliminary hearing on the criminal charges against him and was held over for trial.

Plaintiff's application for unemployment compensation was approved on January 14, 1998, and the School District appealed that decision on January 21, 1998, citing willful misconduct. Plaintiff thereafter received a February 19, 1998 letter requesting his appearance at a second school hearing on March 11, 1998. Subsequently, the Plaintiff also received a letter from his health care provider dated March 2, 1998 that his health care benefits were terminated on January 1, 1998.

At the second school hearing, which Plaintiff alleges was procedurally similar to the December 15, 1998 hearing, the Plaintiff was advised that he might be terminated due to the School District's policy against employing individuals who had been arrested and criminally charged. On March 31, 1998, Plaintiff had a telephone conversation with his PFT representative who informed Plaintiff that he was terminated on March 20, 1998, despite Plaintiff's prior receipt of a letter dated March 20, 1997, containing specific language merely recommending termination. (Compl., ¶ 8.)[2] Plaintiff's PFT representative alluded to a School District Arrest Policy and advised the Plaintiff to proceed to labor arbitration.

The Plaintiff was awarded unemployment benefits on April 22, 1998, and the School District filed a request for a remand hearing on April 24, 1998. The criminal charges against Plaintiff were dismissed on July 31, 1998. Plaintiff thereafter filed an EEOC Complaint on June 16, 1999, and a PHRA Complaint on May 7, 1999. The EEOC issued Plaintiff a right-to-sue letter on November 4, 1999, dismissing Plaintiff's Complaint as time-barred. The PHRA also issued the Plaintiff a letter on August 11, 1999, dismissing Plaintiff's Complaint as untimely and beyond the PHRC's jurisdiction. Thereafter, on January 31, 2000, Plaintiff filed an in forma pauperis motion in this Court, which was denied on February 3, 2000. Plaintiff then filed his Complaint on February 7, 2000, alleging a failure to provide COBRA notification violations and also violations of Title VII, the PHRA, RICO, the Fifth and Fourteenth Amendments, the Privacy Act, the Federal Conspiracy Act. The Plaintiff also alleges state law claims of breach of

---

1. Plaintiff was notified by memo on December 8, 1997 about the investigatory conference originally scheduled for December 10, 1997 with a Boone Administrator. The conference was later rescheduled for December 17, 1997.

   Plaintiff alleges that he was not given a proper hearing and received improper due process, was not presented with a list of charges against him nor advised of his right to be represented by counsel at the hearing. In addition, Plaintiff alleges that he was not permitted to present testimony, witnesses or evidence and was denied his right to cross-examine his accuser. Plaintiff admits that he attended the hearing, but following the advice of his attorney, who was not present at the hearing with the Plaintiff, did not answer any questions posed to him by the School Hearing Officer.

2. The termination letter is dated March 20, 1997, but was actually mailed in 1998. This Court, therefore, assumes that the letter should have been dated March 20, 1998.

contract, due process violations, and civil conspiracy.

## II. STANDARD.

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the allegations contained in the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Under Rule 12(b)(6), the Court must determine whether the allegations contained in the complaint, construed in the light most favorable to Plaintiff, show a set of circumstances which, if true, would entitle Plaintiff to the relief he requests. *Gibbs v. Roman,* 116 F.3d 83, 86 (3d Cir.1997)(citing *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)). A complaint will be dismissed only if Plaintiff could not prove any set of facts which would entitle him to relief. *Nami,* 82 F.3d at 65 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. DISCUSSION.

### A. *Plaintiff's PHRA and Title VII Claims.*

The Defendants state that the Plaintiff's Title VII and PHRA claims are time-barred. Title VII requires a timely charge of discrimination to be filed with the Equal Employment Opportunity Commission ("EEOC") before a federal court may adjudicate a claim. *Vaughan v. Pathmark Stores, Inc.,* No. CIV.A.99–18, 2000 WL 39067, at *2 (E.D.Pa. Jan.19, 2000)(citing *Melincoff v. East Norriton Physician Serv.,* No. CIV.A.97–4554, 1998 WL 254971, at *7 (E.D.Pa. Apr.20, 1998)). Generally, a plaintiff must file his EEOC charge "within one hundred and eighty days after the alleged unlawful employment practice occurred ..." 42 U.S.C. § 2000e–5(e)(1). However, in a state such as Pennsylvania, which has its own anti-discrimination laws and enforcement agency, a plaintiff must file an EEOC complaint within 300 days from the date of the alleged discriminatory employment action in order to meet the timing requirements of Title VII. *Id.* Moreover, pursuant to the

Pennsylvania Human Relations Act ("PHRA"), Plaintiff had 180 days after the alleged discriminatory employment action to file his Complaint with the Philadelphia Human Relations Commission ("PHRC"). 43 Pa.S. § 959(h).

Plaintiff was discharged on March 20, 1998, and filed his "Charge of Discrimination Complaint" with the EEOC on June 16, 1999, 6 months beyond Title VII's 300–day filing requirement. The EEOC, therefore, informed Plaintiff on November 4, 1999, that it could not investigate his charge. The Plaintiff did not file his Complaint with the PHRC until June 15, 1999, 9 months beyond the PHRA's 180–day filing requirement. The PHRC, therefore, by letter dated October 4, 1999, dismissed Plaintiff's Complaint for lack of jurisdiction. Thus, Defendants argue that Plaintiff's Title VII and PHRA claims are untimely.

The Plaintiff, however, insists that his EEOC and PHRC complaints were timely filed. He argues that the commencement of the filing periods under Title VII and the PHRA should occur on the dates that the "latest harm" to the Plaintiff occurred. Plaintiff argues that the latest harm he suffered occurred on November 25, 1998, when he received an October 19, 1998 letter from James Ingram, Esquire, an attorney whom he had consulted, stating that the School District was denying Plaintiff's reinstatement because of its Arrest Policy. Accordingly, the Plaintiff contends that October 19 and November 25, 1998 mark the commencement of the PHRA and EEOC filing time periods.

█ Title VII clearly states that its tolling date is the date of the alleged unlawful employment practice. Here, the alleged unlawful employment practice occurred on March 20, 1998. Thus, Plaintiff's Title VII claim is time-barred, because he filed his EEOC complaint 6 months beyond the 300 day filing requirement. Similarly, the Plaintiff's PHRA claim is time-barred because the Plaintiff waited over one year after March 20, 1998 to file his claim with

the PHRC. Defendants' Motion to Dismiss is therefore granted for Plaintiff's Title VII and PHRA claims.

### B. *Plaintiff's Breach of Contract Claim.*

Defendants also move to dismiss Plaintiff's breach of contract claim because it is a state law claim governed by the Public Employee Relations Act ("PERA"), 43 P.S. § 1101.101 *et seq.* The PERA, Article IX, section 903, provides for mandatory arbitration of disputes or grievances and binding arbitration as the final step of dispute resolution. Defendants also state that the collective bargaining agreement in effect between the PFT and the School District governs the steps which the Plaintiff was obligated to follow in the grievance procedure.

The Collective Bargaining Agreement states in Article T–VIII, section 8 that

> [t]enured and/or non-tenured employees shall not be subjected to discipline or discharge except for just cause and in such cases the employee shall have the option of electing to proceed under the provisions of the Pennsylvania Public School Code or under the grievance and arbitration provision of this Agreement.

(Defs.' Mem. Law in Supp. Mot. to Dismiss at 4.) The moving Defendants contend that the Plaintiff admits that he "waived any and all rights to a hearing before the Board for failure to request one within ten (10) days of receipt of the recommended termination letter." (Compl., ¶ 32.) Therefore, according to the Defendants, Plaintiff's only other remedy was to request that the PFT file a demand for arbitration on his behalf. On October 23, 1998, the Plaintiff requested that the PFT process his grievance by "utilizing the grievance and arbitration provisions of the Collective Bargaining Agreement." (Compl., ¶ 51.) The PFT, despite Plaintiff's request, declined to file a demand for arbitration on his behalf. The Defendants correctly state that the Plaintiff, through his breach of contract claim, alleges that the PFT failed to represent him. Because the Plaintiff did not name the PFT as a

Defendant, the Defendants claim the Plaintiff's breach of contract claim fails under Fed.R.Civ.P. 12(b)(7) for failure to join the PFT as an indispensable party.

The Plaintiff responds that disciplinary issues involving professional educators in the School District are governed by the Pennsylvania Public School Code ("PAPSC"), 24 P.S. section 11–1101, *et seq.,* not the PERA. Under the PAPSC, the only valid causes for termination of an educator are "[i]mmorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee …" 24 P.S. § 11–1122. Moreover, the Plaintiff claims that the School District improperly terminated his Professional Employee's Contract without just cause and violated the terms of the Collective Bargaining Agreement between the PFT and the School District by improperly terminating him and failing to expunge negative documents as required by the terms of the Agreement.

■ At this stage of the litigation, the specific language of the Collective Bargaining Agreement in place between the PFT and the Defendant School District is unknown to the Court; therefore the Defendants' Motion with respect to the Plaintiff's breach of contract claim must be denied.

### C. *Failure to Provide COBRA Notification*

Defendants also move to dismiss Plaintiff's claim against the Defendants for failure to provide COBRA notification because the Defendants allege that termination for "gross misconduct" is not a "qualifying event" under 29 U.S.C. section 1163 which would require the School District to notify Plaintiff of his COBRA options. The Plaintiff asserts, in response, that "an arrest does not constitute gross misconduct when there is no conviction

and/or the charges are dismissed without prejudice resulting from the outcome of the District Attorney's investigation. The charge of rape was dismissed because of lack of evidence ..." (Pl.'s Resp. at 4.) In addition, the Plaintiff states that the Defendant School District fails to establish just cause for Plaintiff's termination because it contends that he was terminated on charges of immorality and moral turpitude, yet the evidence and testimony overwhelmingly support his assertion that he was terminated as a result of his arrest, not for gross misconduct.

The Plaintiff notes that, on appeal, the unemployment compensation referee ruled that the School District did not establish gross misconduct or wrongdoing by the Plaintiff. Plaintiff was therefore awarded unemployment benefits. The Plaintiff also states that the School Board: (1) failed to meet the requirements of I.R.C. § 4980B; (2) improperly terminated his health care coverage without establishing gross misconduct; and (3) failed to provide the Plaintiff with a notice of election of continued health care at a group rate, "constituting negligence (which entitles plaintiff to civil penalties) and intentional [ ] (which gives rise to potential damages)." (Compl., ¶ 73.)

A health plan administrator is required by COBRA to provide sufficient notice of COBRA rights to a covered employee and qualified beneficiaries who would lose coverage under the plan as a result of a qualifying event. 29 U.S.C. § 1161. Upon the occurrence of a "qualifying event," "the employer of an employee under a plan must notify the administrator ... within 30 days ... of the date of the qualifying event[.]" 29 U.S.C. § 1166(a)(2). The administrator must then notify any qualified beneficiary of his COBRA rights within 14 days of the receipt of notification from the employer. 29 U.S.C. § 1166(a)(4)(A) & (c). The termination of a covered employee's employment is a qualifying event. 29 U.S.C. § 1163(2).

The issue for this Court to decide is whether the Plaintiff has stated a cause of action for the School District's failure to notify him of his COBRA benefits. The Defendants state that they were "not ... legally obligated to provide any sort of COBRA notification to the plaintiff since termination for 'gross misconduct' is not a 'qualifying event' under 29 U.S.C. § 1163 which would have then required the School District to notify the plaintiff of his COBRA options pursuant to 29 U.S.C. § 1166." (Defs.' Mem. Law in Supp. Mot. to Dismiss at 5.) The alleged reason for Plaintiff's termination was his criminal arrest, and he alleges at paragraph 32, that "[a] teacher cannot be terminated for immorality or unfitness to teach where he is innocent [of] wrongdoing. The District may only remove a teacher incident to a criminal arrest where the conduct underlying the arrest is immoral or otherwise indicates an unfitness to teach." (Compl., ¶ 32.)

█ The definition of gross misconduct varies from state to state. Under Rule 12(b)(6), this Court must consider whether the Plaintiff can prove any set of facts which would entitle him to relief. Here, the Plaintiff's allegation that an arrest and subsequent dismissal of criminal charges do not constitute gross misconduct may entitle Plaintiff to the relief he requests. Thus, Defendants' Motion to Dismiss with respect to Plaintiff's COBRA notification claim is denied.

### D. *Presumption of Innocent Until Proven Guilty*

The Defendants move to dismiss the Plaintiff's allegation that they violated Plaintiff's constitutional right to "presumption of innocent until proven guilty" (Compl., ¶ 75,) because this statement constitutes legal prose rather than a substantive, actionable and legally recognizable claim. "Innocent until proven guilty" is the burden of proof in a criminal proceeding, and therefore paragraph 75, comprising Count VIII of Plaintiff's Complaint, is dismissed.

### E. *Fifth Amendment Claims.*

■ The Plaintiff also alleges that "the Defendant attempted to subject plaintiff to the same offence [sic] twice and/or have jurisdiction over criminal charges that were dismissed by the District Attorney [sic] Office." (Compl., ¶ 77.) It seems that the Plaintiff, by this allegation, seeks to implicate the Fifth Amendment prohibition against double jeopardy. The Defendants correctly state that resolution of criminal charges in favor of a defendant does not bar subsequent civil or administrative proceedings concerning the very same underlying misconduct, however. *Stone v. United States,* 167 U.S. 178, 188, 17 S.Ct. 778, 42 L.Ed. 127 (1897); *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 366, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *United States v. Crispino,* 586 F.Supp. 1525 (D.N.J.1984); *Commonwealth of Pa. State Police v. Swaydis,* 504 Pa. 19, 470 A.2d 107 (1983). Consequently, Plaintiff's Fifth Amendment double jeopardy claim at paragraph 77 of his Complaint is dismissed.

The Defendants do not, however, address the Plaintiff's Fifth Amendment claim regarding deprivation of property interests found at paragraph 76 of the Complaint.[3] Therefore, the portion of Plaintiff's Fifth Amendment claim in paragraph 76 survives this Motion to Dismiss.

### F. *Claim for Relief Under the Privacy Act.*

Defendants' counsel, unable to locate within either the federal or state statutes an official act referenced by Plaintiff as the "Privacy Act of 1974," asks this Court to direct the Plaintiff to provide a more definite statement with respect to the "creditors" generally referenced in Plaintiff's "claim for relief under the Privacy Act of 1974." (Defs.' Mot. to Dismiss at 2.) The Defendants suppose that this claim refers to the Right of Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. sections 3401–3422, which focuses on a customer's right to notice before government agencies are permitted access to records of his financial transactions and the customer's right to contest such access. 12 U.S.C. §§ 3401–3422. The Defendants state that the Plaintiff does not identify the creditors to whom the Plaintiff's allegedly private information such as his address and telephone number was disclosed. According to the Defendants, the Plaintiff's failure to identify with any specificity the identity of these "creditors" or whether these "creditors" are government agencies which might then trigger the RFPA requires dismissal for failure to state a claim upon which relief may be granted. The Plaintiff did not respond to this portion of the Defendants' Motion to Dismiss; therefore, this Court will compel the Plaintiff to provide a more definite statement of the allegations set forth in paragraph 78 of his Complaint.

### G. *Claim for Relief for Failing to Comply with the Public School Codes of Pennsylvania.*

The Defendants note that paragraph 79 of the Plaintiff's Complaint alleges that the Defendants "persistently and willfully violated and failed to comply with the laws of this Commonwealth" and "[t]he Defendant's [sic] conduct constitutes immorality, incompetency, intemperance, cruelty and persistent negligence." (Compl., ¶ 79.) The Court agrees with the Defendants' interpretation that these statements do not, in and of themselves, comprise legally cognizable claims under federal or state law. The Defendants fail to address the Plaintiff's allegations in the first sentence of paragraph 79, that "Defendant failed to comply with procedures set forth in the law regarding disciplined [sic] of tenured teachers (Public School Codes 24 P.S. 11–

---

3. In paragraph 76 of his Complaint, the Plaintiff alleges that he "had property right [sic] and expectation of continued employment. Defendant violated Plaintiff [sic] 5th amendment and Commonwealth statute to [sic] right to 'life, liberty or property.['] Therefore, defendant deprived Plaintiff's [sic] of 'life, liberty, or property' by not complying with procedural due process safeguards when dismissing him without just cause."

1121 through 1132)." (Compl., ¶ 79.) The Plaintiff states a valid cause of action, therefore Defendants' Motion to Dismiss is denied with respect to paragraph 79 of Plaintiff's Complaint, Defendants' failure to comply with the Pennsylvania Public School Code.

### H. Claim for Relief for Improper Suspension and Wrongful Termination

■ The Defendants claim that the Plaintiff's statement that "[p]laintiff was improperly suspended and subsequently improperly terminated without just cause," (Compl., ¶ 80,) is a restatement of the Plaintiff's breach of contract claim at paragraphs 71 and 72. Therefore, the Defendants move for dismissal of paragraph 80. A very limited action for wrongful discharge exists for at-will employees under Pennsylvania law "because employees who are not at-will may bring their claims under breach of contract theories." *Cini v. National R.R. Passenger Corp.*, No. CIV. A.99–2630, 1999 WL 1049833, at *2 (E.D.Pa. Nov.19, 1999)(citing *Ricciardi v. Consolidated Rail Corp.*, No. CIV.A.98–3420, 1999 WL 77253, at * 2 (E.D.Pa. Feb.8, 1999) (citations omitted)). Because the Plaintiff in this case is covered under a collective bargaining agreement, he is not an at-will employee. *Id.* (citations omitted). Moreover, "a contracted or tenured employee may not sue for wrongful discharge ...." but "may seek relief only under a breach of contract theory." *Freeland v. Lower Merion Sch. Dist.*, No. CIV. A.94–2559, 1995 WL 129200, at *6 (E.D.Pa. Mar.24, 1995)(citing *Ross v. Montour R.R. Co.*, 357 Pa.Super. 376, 516 A.2d 29, 32 (1986)). Therefore, no action for wrongful discharge is available to the Plaintiff in the instant case and this claim is dismissed.

Defendants' incorrectly contend, however, that the Plaintiff's improper suspension and wrongful discharge claims are merely restatements of his breach of contract claim. Rather, these claims may provide a basis for Plaintiff's 5th and 14th Amendment claims. To that extent, they survive this Motion.

### I. RICO

RICO provides a civil cause of action for any private person injured in his business or property by reason of a violation of 18 U.S.C. section 1962. 18 U.S.C. § 1964; *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Section 1962, containing four subsections, prohibits the following activities: (1) using or investing, directly or indirectly, income in the acquisition or establishment of any enterprise engaged in interstate or foreign commerce; (2) acquiring or maintaining, directly or indirectly, any interest in or control of any enterprise which is engaged in or the activities of which affect interstate commerce; (3) conducting or participating, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt; and (4) conspiring to violate any of the provisions of (a), (b) or (c). 18 U.S.C. § 1964.

■ The Defendants move for dismissal of the Plaintiff's RICO claim on the basis that the Plaintiff has failed to plead that (1) the defendant(s) violated the substantive RICO statute in 18 U.S.C. section 1962; and (2) the plaintiff was injured in business or property by reason of a violation of section 1964. 18 U.S.C. § 1962. Although the Plaintiff did not respond to this portion of the Defendant's Motion to Dismiss, the Plaintiff cannot prove any set of facts in support of his claim that will entitle him to relief because all of the alleged operative facts occurred in Pennsylvania with no interstate or foreign commerce involvement. Thus, the Plaintiff's RICO claim is dismissed.

### J. Claim for Relief Under the Federal Conspiracy Statute.

The Defendants also claim that paragraphs 82A and 83 are fundamentally restatements of the Plaintiff's RICO claim in paragraph 81A–R and must be dismissed because the Plaintiff fails to allege a sec-

tion 1962 violation and injury. The Plaintiff labels these paragraphs "Claim for Relief Under Federal Statute for Conspiracy." (Compl., ¶ 82.) The Federal Conspiracy Statute sets forth the penalties for a conspiracy to commit an offense against or defraud the United States. 18 U.S.C. § 371. In paragraph 82(A), the Plaintiff does not allege a conspiracy against or attempt to defraud the United States. Compl., ¶ 82A. Thus, Plaintiff's claim under the Federal Conspiracy Statute fails. To the extent that the Plaintiff sets forth an allegation of civil conspiracy, however, his claim survives this Motion.

An Order follows.

### *ORDER*

AND NOW, this 25th day of July, 2000, upon consideration of the Defendants' Motion to Dismiss, and Plaintiff's Response thereto, it is hereby ORDERED that

1. Defendants' Motion is DENIED in part and GRANTED in part;

2. Defendants' Motion is GRANTED as to Plaintiff's PHRA, Title VII, RICO, Fifth Amendment double jeopardy and wrongful termination claims, and those claims are DISMISSED;

3. Defendants' Motion is DENIED as to Plaintiff's notification of COBRA benefits, breach of contract, common law conspiracy, and Fifth and Fourteenth Amendment claims; and

4. Plaintiff shall provide, within fourteen days of the date of this Order, a more definite statement of the allegations set forth in paragraph 78 of his Complaint, and the Defendants are granted leave to thereafter renew their Motion to Dismiss that portion of the Plaintiff's Complaint.