**Judith A. BURKE, Plaintiff,**

v.

**AMERICAN STORES EMPLOYEE BENEFIT PLAN and American Stores Company, Defendants.**

**No. 91 C 0827.**

United States District Court, N.D. Illinois, E.D.

March 3, 1993.

Terrance Bryan McGann, Hugh J. McCarthy & Associates, Ltd., Chicago, IL, Raymond Edward Clutts, Neil Jordan Greene, Grabowski & Clutts, Evanston, IL, Ronald J.

Hennings, Blatt, Hasenmiller, Leibsker & Moore, Chicago, IL, for plaintiff.

Gerald L. Maatman, Jr., Michael A. Pollard, Baker & McKenzie, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

### HOLDERMAN, District Judge:

Plaintiff Judith A. Burke filed this action against defendants American Stores Employee Benefit Plan and American Stores Company ("American Stores"), claiming violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The parties have filed cross motions for summary judgment. For the reasons stated in this memorandum opinion and order, plaintiff's motion is denied and defendants' motion is granted.

### FACTUAL BACKGROUND

From February 1, 1989 to November 28, 1989, plaintiff Judith Burke worked for Jewel Food Stores, Inc. ("Jewel"), a subsidiary of defendant American Stores Co., as a part-time grocery clerk at a Jewel store in Joliet, Illinois. (See Defendants' Statement of Undisputed Facts, ¶¶ 1–2.) During her tenure as a Jewel employee, plaintiff Burke was covered by the American Stores Health Care Plan ("the Plan"), which is a self-insured employee benefit plan subject to ERISA. (*Id.*, ¶ 4.)

On November 28, 1989, Jewel terminated plaintiff's and another individual's employ-

ment. The dismissal followed an inquiry into their allegedly improper use of Jewel promotional materials—"Turkey Saver Stamps"—to obtain free turkeys from Jewel food stores. Plaintiff handwrote a signed statement on November 22, 1989 at the request of Jewel investigating personnel in which plaintiff admitted:

About 2 or 3 weeks ago, (Jane Doe)[1] brought Jewel saver stamps to my home, which she had wrongfully gotten from the Jewel store on Jackson Street, Joliet, Illinois. After this time, (Jane) had brought saver stamps to the house approx. 2 or 3 other times. These stamps were removed from books & placed on stamp saver pages. With these Jewel stamps we ([Jane Doe], my daughter Marge, and myself) went to different Jewel stores in the Joliet area & purchased turkeys without paying for them. I myself personally went about 5 times & obtained turkeys with the Stolen Jewel saver stamps.

I realize this was wrong and a violation of comp. policy when I knowingly used these Jewel saver stamps to purchase turkeys because I know the stamps were taken from the Jewel store by (Jane Doe).

(See Defendants' Statement of Undisputed Facts, ¶ 14; Exhibit E.)

Jewel's Area Personnel Manager determined plaintiff's and Jane Doe's terminations to be for "gross misconduct." (*Id.*, ¶¶ 16–18.) Pursuant to certain provisions of the Consolidated Omnibus Budget Reconciliation Act of

---

1. The name "Jane Doe" has been used by the parties to conceal the identity of the other terminated Jewel employee involved in the turkey stamp incidents. Jane Doe is not a party to this litigation. On November 20, 1989, Jane Doe gave the following statement to Jewel:

    About 2–3 weeks ago, Judy Burke asked me if I would get Jewel saver stamps from my register while I was checking and take them to her. I told her I would try and to the best of my knowledge, I have stolen five different times the Jewel saver stamps. Each time I stole a book which contained half to three quarter filled with Jewel saver stamps. I took these stamps and gave to Judy Burke.

    To the best of my knowledge I have gone with Judy Burke or her daughter Marge Burke to all 3 Joliet Jewel stores and redeemed the stolen saver stamps and obtained about 28 turkeys free without paying for them.

    On Sunday, Marge Burke and I were in the Jewel store on Jackson and got 2 turkeys each with the stolen saver stamps. Today, Judy Burke and I were in the store on Jefferson and redeemed 1 turkey each with the stamps.

(See Defendants' Statement of Undisputed Facts, ¶ 13; Exhibit D.) Plaintiff has objected to the defendants' use of Jane Doe's statement, labelling it hearsay under Fed.R.Evid. 802 and protesting her inability to cross-examine Jane Doe. If Jane Doe were unavailable as a witness, as that phrase is defined by Fed.R.Evid. 804(a), Jane Doe's statement could be admissible as a statement against interest under Fed.R.Evid. 804(b)(3). Moreover, Jane Doe's statement is relevant even if not offered for the truth of matters asserted because it was part of the information upon which Jewel relied in making the determination to terminate plaintiff's employment on the basis that she had committed "gross misconduct."

1986 ("COBRA"), 29 U.S.C. §§ 1161(a), 1163(2), a person who is discharged for gross misconduct can be denied the opportunity to continue receiving health care benefits after dismissal. Accordingly, Jewel's Area Personnel Manager determined plaintiff was not to be offered the option provided by COBRA of continuing with the Plan's health care coverage at her own expense. (*Id.*, ¶¶ 17–18.) Therefore, Ms. Burke, after her termination from Jewel, was not notified of any right to continue the health care coverage she had been provided under the Plan while she had been employed by Jewel.

Several months after her termination from Jewel, Ms. Burke fell in her home and was injured. Thereafter, between March 6, 1990 and June 28, 1990, plaintiff incurred more than $150,000 in medical fees, which were not paid by the Plan. (*Id.*, ¶ 19.) These funds are the subject of this lawsuit.

Prior to her termination, plaintiff Burke had filed a worker's compensation claim against Jewel and was suffering from physical ailments for which she was receiving medical care. (Plaintiff's Statement of Undisputed Facts, ¶¶ 1, 8.) The Jewel Area Personnel Manager who fired plaintiff knew of Ms. Burke's pending worker's compensation claim when she discharged Ms. Burke. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, ¶ 16.) Ms. Burke maintained, at her deposition in this case, that at the time she redeemed the Turkey Saver Stamps and obtained free turkeys, she was unaware that the stamps given to her by Jane Doe were stolen. (Burke Deposition, pp. 39 and 68.) Ms. Burke contends that her November 22, 1989 statement was made in the context of the knowledge she had after talking with the Jewel investigating personnel at the time she wrote the November 22, 1989 statement. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, ¶ 14.) According to Ms. Burke, Jewel investigating personnel told her what to write in the statement and also told her that the statement would not jeopardize her job or her health benefits. Ms. Burke, however, does not "retract the veracity of" her November 22, 1989 statement. *Id.*

## DISCUSSION

In Count I of her Amended Complaint, plaintiff Burke asserts a claim under 29 U.S.C. § 1132(a)(1)(B) of ERISA for wrongful denial of benefits. In Count II, she claims that defendants violated COBRA, 29 U.S.C. § 1161 *et seq.*, by not notifying her of her eligibility for continuing health benefits coverage. In Count III, plaintiff alleges, pursuant to 29 U.S.C. § 1140, that Jewel's termination of her employment and its refusal to offer her continuation coverage constituted discrimination for and intentional interference with her attainment of a right accorded to her by a benefits plan covered by ERISA.

## I. COUNTS I AND II: TERMINATION FOR "GROSS MISCONDUCT"

The viability of plaintiff's claims in Counts I and II hinges on whether the "gross misconduct" termination exemption of COBRA properly applies under the facts in her case. Plaintiff bases her claims for post-termination benefits on 29 U.S.C. § 1161(a) of COBRA, which provides that:

> The plan sponsor of each group health plan shall provide in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

At 29 U.S.C. § 1163(2), COBRA defines "qualifying event" as, *inter alia:*

> The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

■ Under this provision, if Ms. Burke's employment were properly terminated for "gross misconduct," then her termination was properly not a "qualifying event" and she was not entitled to continuing coverage under COBRA. If she was not entitled to the opportunity for continued benefits under COBRA, she has no claim against the Plan for her medical expenses. Her challenge to her employer's decision raises two main issues: 1) whether her alleged behavior constituted "gross misconduct" within the meaning of COBRA; and 2) whether Jewel's decision that Ms. Burke engaged in the alleged be-

havior is sufficiently grounded in fact so as to withstand judicial review.

### A. Definition of "Gross Misconduct."

Defendants argue that Ms. Burke was terminated from Jewel's employment for stealing Jewel's property (the turkeys), and assert that Jewel properly characterized this behavior as "gross misconduct." There is little direct statutory or judicial guidance on the meaning of "gross misconduct" as it is used in 29 U.S.C. § 1163. One published federal court opinion defining "gross misconduct" under COBRA is *Paris v. F. Korbel & Brothers, Inc.,* 751 F.Supp. 834 (N.D.Cal. 1990). In that opinion, the court referred to the California state courts' standard for determining the level of employee misconduct necessary to justify denial of unemployment insurance benefits. The California state courts described such misconduct as:

> conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interest or the employee's duties and obligations to his employer.

*See Paris,* 751 F.Supp. at 838, citing *Amador v. Unemployment Insurance Appeals Board,* 35 Cal.3d 671, 678, 677 P.2d 224, 200 Cal. Rptr. 298 (1984). The court in *Paris* found that an executive hostess had not been discharged for gross misconduct when she was fired for telling a fellow employee about certain executives' conversations concerning him.

The court in *Paris* stated that unemployment insurance serves functions analogous to those of the COBRA provisions of ERISA. 751 F.Supp. at 838. As the Seventh Circuit has recognized, one of ERISA's purposes is to protect the financial integrity of employee pension and welfare plans by confining benefits to those appropriately accorded under the Plan. *See Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992).

■ Given the similarities of the policy concerns, expressed by the courts, this court considers the approach taken in *Paris* to define "gross misconduct" to be reasonable. Under Illinois law, an employee is ineligible for unemployment benefits if discharged for misconduct, which is defined as:

> the deliberate and. willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit.

*See* Ill.Rev.Stat. ch. 48 ¶ 432A. The section further provides:

> no benefit rights shall accrue to any individual based upon wages from any employer for service rendered prior to the day such individual was discharged because of the commission of a felony in connection with his work or *because of theft in connection with his work* ... provided, that ... the individual has admitted his commission of the felony or theft to a representative of the Director, or has signed a written admission of such act and such written admission has been presented to a representative of the Director.

Ill.Rev.Stat. ch. 48 ¶ 432B. (emphasis added.)

■ The Illinois statute's explicit specification of theft [2] as an act which disqualifies

---

**2.** Illinois Revised Statues, ch. 38, ¶ 16–1 states in pertinent part:

"§ 16–1. Theft. (a) A person commits theft when he knowingly: (1) Obtains or exerts unauthorized control over property of the owner; or (2) Obtains by deception control over property of the owner; ..."

Illinois Revised Statutes, ch. 38, ¶ 16A–3 states in pertinent part:

"§ 16A–3. Offense Retail Theft. A person commits the offense of retail theft when her or she knowingly:

(a) Takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise

**1136**

an employee from receiving unemployment benefits underlines the public recognition of the wrongfulness of employees stealing from their employers.

■ Although relying solely upon state law to define the term "gross misconduct" as used in COBRA may be inappropriate, *see Hammond v. Fidelity and Guaranty Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992), the policies promoted by state law may also be legitimate considerations for a federal court which is seeking to apply the federal common law on a uniform basis nationwide. Discouraging employee theft and encouraging employee honesty is a public policy which should be applied nationwide. Withholding COBRA's benefits under the "gross misconduct" exception as to employees who engage in criminal theft from their employers would further the nationwide application of that policy.

Viewed in the light of these considerations, the plaintiff's procurement of turkeys through the redemption of Turkey Saver Stamps rises to the level of criminal theft and constitutes "gross misconduct" sufficient to justify a denial of continuing coverage under COBRA if a determination is properly made that plaintiff knew the redeemed stamps had been obtained by unauthorized means.

B. *Judicial Review of Factual Determination of Gross Misconduct.*

1. Plaintiff's Position.

Ms. Burke does not forcefully argue that criminal theft does not constitute "gross misconduct" under COBRA. She instead forwards factual arguments, primarily asserting that she is not guilty of criminal theft. Ms. Burke contends that she "was unaware that Jane Doe had wrongfully or illegally obtained the stamps in violation of the Jewel Turkey Stamp Saver Policy and procedure statement." (Plaintiff's Statement of Undisputed Facts, ¶ 6.)

Ms. Burke does not, however, recant the November 22, 1989 statement she gave to Jewel in which she stated "[Jane Doe] had wrongfully gotten [the Turkey Saver Stamps] from the Jewel store on Jackson Street ..." Ms. Burke asserts that though her statement

without paying the full retail value of such

was in her handwriting, she was told by Jewel personnel what to write and was told that her signing the statement would enable her to continue receiving benefits. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, ¶ 14.)

Ms. Burke has never asserted her November 22, 1989 statement is factually untrue. In fact, Ms. Burke "refused to retract the veracity of this statement" at her deposition. *Id.* Ms. Burke argues that her statements concerning her "knowledge" that the Turkey Saver Stamps were stolen as set forth in her November 22, 1989 statement should be viewed as referring to her knowledge at the time she signed the November 22, 1989 statement, after she had been told by Jewel that the stamps were stolen. *Id.*

Ms. Burke's arguments in essence amount to a request for a *de novo* determination in this court of whether she knew the Turkey Saver stamps were stolen when she used them to obtain Jewel turkeys and thus whether Jewel was correct in discharging her for "gross misconduct." In order to address her contentions, the court must consider the issue of the appropriate standard and method of review of Jewel's decision to terminate plaintiff for gross misconduct.

2. Judicially Expressed Standards of Review as to Determinations Affecting ERISA Benefits.

■ The proper standard for judicial review of decisions affecting employee benefits covered by ERISA is a subject which has received considerable judicial attention. In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court altered the prevailing standard for federal court review of a plan administrator's denial of benefits where the plans' language was silent as to the plan's administrator's discretion. Under *Firestone,* denials of benefits based on plan interpretations by a plan administrator who is not provided interpretive authority by the Plan are to be reviewed *de novo. See e.g., Hammond v. Fidelity and Guaranty Life Ins. Co., supra,* 965 F.2d at 429–30. Among different judicial panels within the Seventh Cir-

merchandise;"

cuit there has been disagreement over terminology as to the standard of review when the plan administrator is accorded interpretive responsibility.[3]

The Supreme Court in *Firestone* left unresolved the question of the standard of review for factual determinations made by a plan administrator, *see, Pierre v. Connecticut General Life Ins. Co.*, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J. dissenting from denial of certiorari). The Seventh Circuit has not yet spoken on the issue. *See Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 n. 2 (7th Cir.1992); *Petrilli v. Drechsel*, 910 F.2d 1441, 1446–47 (7th Cir. 1990). The circuits who have addressed the question are split.[4]

Moreover, the Seventh Circuit has explicitly not answered the question of whether judicial review of factual determinations should focus only on the evidence presented to the Plan or should encompass all evidence placed before the court. *Petrilli*, 910 F.2d at 1448. The other circuits have reached differing conclusions on this issue.[5]

Plaintiff's challenge in this case is not to a determination made by the Plan administrator but rather one made by her employer Jewel, which determined that Ms. Burke's actions constituted "gross misconduct." In *Paris v. F. Korbel & Brothers Inc., supra*, 751 F.Supp. at 838–39, the court reviewed this type of a decision. The district court in *Paris* did not define its standard of review with reference to the standards governing judicial review of a plan administrator's determinations. Rather, the court employed a reasonableness and good faith standard in order to evaluate whether an employer's discharge of an employee for "gross misconduct" was proper under COBRA. *Id.* at 838.

3. Evaluating Plaintiff's Case.

In addressing the issue of the approach which should be taken to the review of Jew-el's decision to discharge plaintiff Burke for "gross misconduct" and deny her COBRA benefits, this court initially concludes that the inquiry into the propriety of an employer's determination should be limited to the evidence which was available to the employer at the time of the employee's termination. *Cf. Perry v. Simplicity Engineering Division of Lukens General Industries, Inc., supra*, 900 F.2d at 966.

Under this approach, the court avoids serving as a "super personnel department" engaged in second-guessing employment decisions based on information which was not available to the employer. *Cf. Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988). Moreover, this approach allows latitude for reliance by an employer upon information, which may not fit into the formalities of admissibility under the Federal Rules of Evidence, that the employer should reasonably and appropriately consider in making a business decision—such as termination of an employee. The result of a contrary rule would be "increased expense and delay of benefit determinations." *Wildbur v. ARCO Chemical Co., supra*, 974 F.2d at 640; *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992).

■ This court's decision to evaluate the case with reference to the information before plaintiff Burke's employer, Jewel, at the time of the termination decision indicates that under the undisputed material facts plaintiff's claims must fail. The evidence of Ms. Burke's wrongdoing available to Jewel was so clear that the correctness of Jewel's determination must be upheld, regardless of whether the court employs a *de novo* or a more deferential standard of review, such as an "abuse of discretion" standard or a "reasonableness" test.

3. *See e.g., Lister v. Stark*, 942 F.2d 1183, 1188 (7th Cir.1991) ("will not be disturbed if reasonable"); *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990) ("abuse of discretion"); *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990) ("arbitrary and capricious").

4. *Compare Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176 (3rd Cir. 1991) (*de novo* review) *with Pierre v. Connecticut*

*General Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991) (abuse of discretion review).

5. *Compare Perry v. Simplicity Engineering Division of Lukens General Industries, Inc.*, 900 F.2d 963 (6th Cir.1990) with *Luby v. Teamsters Health, Welfare and Pension Trust Funds, supra*, 944 F.2d 1176. *See also Wildbur v. Arco Chemical Co.*, 974 F.2d 631, 640–41 (5th Cir.1992) (discussing cases).

Jewel decided to terminate plaintiff Burke because it found that she had engaged in activity which the company properly considered "gross misconduct." The basis of Jewel's determination was Ms. Burke's own admissions in her November 22, 1989 statement[6] and the corroborating November 20, 1989 statement of Jane Doe. The record offers no indication that plaintiff offered a competing version of these facts at the time of her dismissal from Jewel.

Ms. Burke's attempt to raise factual issues relative to Jewel's denial of COBRA benefits, which comes months after her firing and after she has incurred significant medical expenses, is too late. *Cf. Winchester v. Pension Committee of Michael Reese Health Plan, etc.*, 942 F.2d 1190 (7th Cir.1991). Based on the undisputed material facts as to the information available to Jewel at the time it had to decide to terminate or continue Ms. Burke's employment, Jewel's decision was correct.

Ms. Burke's own statement as to the facts, which she has never repudiated, provided Jewel with the appropriate basis. Viewing those undisputed material facts in the light most favorable to Ms. Burke, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), no reasonable factfinder could reach a contrary result. *Id.* at 249, 106 S.Ct. at 2510–11. Jewel acted properly and reasonably in deciding to terminate Ms. Burke for gross misconduct in which it found she had engaged. *Id.* at 249, 106 S.Ct. at 2510–11. Jewel therefore appropriately applied § 1163(2) of COBRA in eliminating Ms. Burke's eligibility for continuing coverage under COBRA.

## II. CLAIM UNDER 29 U.S.C. § 1140

Title 29 United States Code § 1140 prohibits any person from, *inter alia*, discharging any plan participant for the purposes of interfering with the attainment of any right to which the participant may become entitled under the plan. Plaintiff claims that the defendant violated this section by discharging plaintiff for "gross misconduct" thereby interfering with her right to COBRA benefits.

In order to succeed on her claim under 29 U.S.C. § 1140, plaintiff must first present a *prima facie* case that the desire to interfere with her health benefits was a "determinative factor" in her employer's decision. *See Meredith v. Navistar International Transportation Corp.*, 935 F.2d 124, 127 (7th Cir.1991), citing *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3rd Cir.1990). If a *prima facie* case is made, then, as in a Title VII case, the burden shifts to the employer to articulate a permissible reason for its action. *Meredith*, 935 F.2d at 127. The employee then bears the burden of proving that the proffered reason was a pretext for interference with rights under the plan.

Plaintiff Burke cannot sustain her burden in this case. The uncontested facts demonstrate that she was involved in the improper use of stolen Turkey Saver stamps and her connection with the theft led directly to her dismissal. Ms. Burke contends that Jewel wrongly concluded that she redeemed the stamps knowing them to have been stolen, but this argument does not support the conclusion that Jewel's proffered reason for discharging her for gross misconduct was not its true reason. *See Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (discrimination inquiry focuses on whether employer has truthfully explained its actions, not on whether employer was mistaken in taking those actions). Therefore, even if Jewel were mistaken (which this court holds it was not) in its decision that Ms. Burke engaged in gross misconduct, so long

---

**6.** Plaintiff argues that her November 22, 1989, statement does not operate as an admission that she knew the turkey stamps were stolen when she redeemed them. She does, however, admit that she "knowingly" used the stamps. Jewel was justified in interpreting the statement as an admission of wrongful conduct and in relying upon it in discharging her. This conclusion is especially appropriate in light of Jane Doe's statement, which indicates that plaintiff acted knowingly. There is no evidence before the court which would demonstrate that plaintiff at the time of the incident argued to Jewel that her November 22, 1989 statement was not an admission of wrongful conduct. Further, plaintiff's post-litigation protestations that she had wrote and signed her November 22, 1989 statement under the induced misapprehension that by doing so she would save her benefits are immaterial, as she has never asserted that the November 22, 1989 statement is false, but merely that it is subject to misinterpretation.

as that was Jewel's true reason for terminating Ms. Burke's employment, Jewel should prevail on plaintiff's claim under 29 U.S.C. § 1140.

Jewel's knowledge that plaintiff had filed a worker's compensation claim and was incurring medical expenses does not support the conclusion that she was discharged for discriminatory reasons. Discriminatory intent and action cannot be inferred from knowledge alone. *See Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 658 (7th Cir.1991). The claimed inference of discriminatory animus is made even more unlikely in this case in light of the circumstances surrounding plaintiff's dismissal. Based on the record before the court, no reasonable trier of fact could conclude that Jewel did not discharge Ms. Burke for engaging in what Jewel decided was gross misconduct, but rather fired her in order to interfere with her health benefits. Defendants are consequently entitled to summary judgment.

## CONCLUSION

For the reasons stated in this memorandum opinion and order, defendants' motion for summary judgment is GRANTED. Plaintiff's motion to strike and plaintiff's motion for summary judgment are DENIED. This case is dismissed in its entirety.