Michael A. McKNIGHT, Plaintiff,

v.

SCHOOL DISTRICT OF PHILADELPHIA, et al., Defendants.

No.  CIV.A. 00–573.

United States District Court, E.D. Pennsylvania.

April 18, 2001.

Michael A. McKnight, Philadelphia, PA, pro se.

Alex H. Pierre, Picard Losier and Assoc., Philadelphia, PA, for plaintiff.

Michael J. Feinberg, Philadelphia, PA, for defendants.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Before this Court is the Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

## I. FACTS.

Because the facts of this case have been set forth at length in a prior Memorandum Opinion, a brief factual recitation follows. *See McKnight v. Sch. Dist. of Phila.*, 105 F.Supp.2d 438 (E.D.Pa.2000). The Plaintiff, Michael A. McKnight ("Plaintiff" or "Mr. McKnight"), was employed as a teacher by the Defendant School District of Philadelphia ("School District") from September, 1976 through December 17, 1997, when he was suspended without pay. Plaintiff was arrested on November 20, 1997, and charged with sexual assault and other crimes allegedly committed in his home against an eighteen year old male who was Plaintiff's former student. The School District held an investigatory conference on December 15, 1997, which the Plaintiff attended with his Philadelphia Federation of Teachers ("PFT") union representative. A second hearing was held on March 11, 1998, during which the Plaintiff was advised that he might be terminated due to the School District's policy against employing individuals who had been arrested and criminally charged. Plaintiff was subsequently discharged on March 20, 1998.

The criminal charges against the Plaintiff were dismissed on July 21, 1998. Thereafter, the Plaintiff filed EEOC and PHRA complaints, both of which were dismissed as untimely. On January 31, 2000, Plaintiff, acting pro se, filed an in forma pauperis petition in this Court which was denied on February 3, 2000. He then filed this Complaint on February 7, 2000. The Defendants filed a Motion to Dismiss which was partially granted on July 25, 2000. Plaintiff subsequently retained and fired counsel, and is now acting pro se. Defendants filed the instant Motion for Summary Judgment on January 2, 2001.

## II. STANDARD OF REVIEW.

"Summary judgment is appropriate when, after considering the evidence in the light most favorable to the nonmoving par-

ty, no genuine issue of material fact remains in dispute and 'the moving party is entitled to judgment as a matter of law.'" *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 267 (3d Cir.1991)(citing FED.R.CIV.P. 56(c) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The moving party carries the initial burden of demonstrating the absence of any genuine issues of material fact.[1] *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Once the moving party has produced evidence in support of summary judgment, the nonmovant must go beyond the allegations set forth in its pleading and "counter with evidence that demonstrates there is a genuine issue of fact for trial." *Id.* at 1362–63 (citing FED. R.CIV.P. 56(e)). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Unsubstantiated and subjective beliefs and opinions are not competent summary judgment evidence." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

## III. *DISCUSSION.*

The Plaintiff's claims for which the Defendants now move for summary judgment

are: (1) breach of contract; (2) notification of COBRA benefits; (3) common law conspiracy; and (4) Fifth and Fourteenth Amendment claims. Each claim is discussed below.

### A. Breach of Contract.

This Court previously denied the Defendants' Motion to Dismiss the Plaintiff's breach of contract claim because the specific language of the Collective Bargaining Agreement ("CBA") in place between the PFT, Plaintiff's former union, and the Defendant School District was unknown to the Court. After that ruling and during his deposition, the Plaintiff described his breach of contract claim in terms of the Defendant School District violating the parties' CBA. Thus, the Defendants contend that any claim for breach of contract is, in reality, a claim for breach of the Public Employees Relations Act, 43 P.S. section 1101.101, *et seq.* ("PERA") which, according to the Defendants, is the sole and exclusive statute governing claims implicating the CBA. Claims under the PERA are resolved in an arbitration setting and not in federal court. According to the Defendants, therefore, "the plaintiff attempts to do indirectly that which he may not do directly, namely, personally seek federal judicial review over the terms and conditions of the collective bargaining agreement in effect between the plaintiff's Union and the School District of Philadelphia." (Defs.' Mem. Law in Supp. Mot. Summ. J. at 11.)

The Defendants further state that the PERA, a statute imposing obligations on the School District and the PFT, defines

---

1. "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F.Supp. 554, 561 n. 14 (E.D.Pa.), *aff'd*, 172 F.3d 40 (3d Cir.1998) (citations omitted).

the Plaintiff's rights as a School District employee and also defines the required procedures for enforcement of the rights and obligations of the School District and the PFT. For example, Section 903 of the PERA requires that a dispute growing out of rights that flow from a collective bargaining agreement in the public sector must be exclusively adjudicated in a grievance and arbitration process. 43 P.S. § 1101.903. Further, Pennsylvania courts have recognized that the Pennsylvania General Assembly expressly commands in section 903 of the PERA that the "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." *Bd. of Ed. of the Sch. Dist. of Phila. v. Phila. Fed'n of Teachers, Local No. 3, AFT, AFL–CIO,* 464 Pa. 92, 346 A.2d 35, 39 (1975)(quoting 43 P.S. § 1101.903 (Supp.1974)).

The CBA in effect between the PFT and the School District states in Article T–III, section 8 that:

> Tenured and/or non-tenured employes shall not be subjected to discipline or discharge except for just cause and in such cases the employe affected shall have the option of electing to proceed under the provisions of the Pennsylvania Public School Code, or, in the alternative, under the grievance and arbitration provisions of this Agreement.

(Defs.' Mem. Law in Supp. Mot. Summ. J., Ex. 8 at 2, ¶ 8.) The CBA also sets forth a grievance procedure for employees to follow. A grievance is defined as:

> a complaint involving the work situation, that there is a lack of policy; that a policy or practice is improper or unfair; or that there has been a deviation from, or a misinterpretation or misapplication of a practice or policy: or that there has been a violation, misinterpretation, misapplication, inequitable or otherwise im-

proper application of any provision of this Agreement.

(*Id.,* Ex. 8 at 3, Art. B–VIII, § 1, ¶ 1a.) The Plaintiff admits in his Complaint that he "waived any and all rights to a hearing before the Board for failure to request one within ten (10) days of receipt of the recommended termination letter." (Compl., ¶ 32.) Plaintiff's other avenue of redress was, therefore, a request that the PFT file a demand for arbitration on his behalf. Plaintiff avers that he requested such PFT action on October 23, 1998, but the PFT declined to file a demand for arbitration on his behalf. (*Id.* at ¶ 51.)

According to the Defendants, Plaintiff's next step should have been to file a claim with the Pennsylvania Labor Relations Board ("PLRB"), which would then have jurisdiction over Plaintiff's claim after exhaustion of his administrative remedies under the CBA. (Defs.' Mem. Law in Supp. Mot. Summ. J. at 14.) The Defendants cite *Ziccardi v. Commonwealth, Department of General Services, Bureau of Buildings & Grounds,* 50 Pa.Cmwlth. 367, 413 A.2d 9, 11 (1980), *overruled in part* 500 Pa. 326, 456 A.2d 979 (1982), a Pennsylvania Commonwealth Court case, wherein the court stated:

> [w]e are mindful that the required arbitration process has been interrupted in this case by the union's alleged wrongful withdrawal of the request for arbitration. However, that action, if unjustified, would not release the Commonwealth from its obligation to arbitrate the dispute, nor would that action legitimate the underlying alleged wrongful discharge. If the union here has interposed an impediment to arbitration by a wrongful withdrawal, the PLRB has jurisdiction to insure that the employer's duty to arbitrate is not discharged by that wrong.

*Ziccardi,* 413 A.2d at 11 (citing *Pa. Labor Relations Bd. v. Phoenixville Area Sch. Dist.,* 8 Pa. 351 (1977)).

Because Mr. McKnight did not follow this next step and file a PLRB claim, the Defendants argue that he has failed to exhaust his administrative remedies and his breach of contract claim should be dismissed.

Mr. McKnight does not specifically respond to the Defendants' arguments, but rather divides his response into three subparts: (1) the Professional Employe's Contract;[2] (2) the CBA; and (3) violations of the CBA. First, the Plaintiff alleges that the Defendants breached his Professional Employe's Contract when they terminated him without cause. He provides the Court with the entire provision of 24 Pa.S.A. section 11–1122.[3] (Pl.'s Resp. Mot. Summ. J. at 2.)

Next, the Plaintiff, under the heading "Collective Bargaining Agreement," states:

> Plaintiff filed PHRC charge number E91504D and EEOC charge number 17F992444 against the Philadelphia Federation of Teachers as a remedy to address allegations that the union breached its duty of fair representation and that he was denied arbitration (unfair representation) because of his race (Black). Plaintiff has been advised off [sic] his right to file a lawsuit against the PFT. The investigation is on going [sic] in respect to this charge. Identifying the PFT as a party to this civil action would end the investigation by PHRC. Therefore the PFT is not joined as an indispensable party.

(Pl.'s Resp. Mot. Summ. J. at 3.) In the final portion of Plaintiff's Response, entitled "Violated Terms of The Collective Bargaining Agreement," the Plaintiff argues that there was no "just cause" reason for his termination as required by the CBA because the PFT, without citing any grounds, declined his request to file a demand for arbitration and never provided a reason for its failure to respond to his arbitration request. According to the Plaintiff, the Public School Code provision setting forth the reasons for termination, 24 Pa.S.A. 11–1122, does not include "criminal ... accusations as grounds for dismissal and [therefore such accusations] cannot be considered a valid cause for termination under this Code." (Pl.'s Resp. Mot. Summ. J. at 4.) For support, the Plaintiff cites *Shearer v. Commonwealth of Pennsylvania, Secretary of Education,* 57 Pa.Cmwlth. 266, 424 A.2d 633 (1981), and interprets the holding in that case as a criminal arrest is not grounds for suspension under section 11–1122 of the Code.

In *Shearer,* a Pennsylvania public school teacher sought judicial review of the back pay allowance provisions of a reinstatement order issued by the Secretary of Education. *Shearer,* 424 A.2d at 634. The teacher had been arrested and charged with possession of marijuana and contributing to the delinquency of a minor. *Id.* After two hearings, the school board discharged the teacher for immorality and intemperance, but on appeal, the Secretary of Education reversed the discharge for lack of substantial evidence to support the charges. *Id.* Mr. McKnight interprets

---

**2.** The word "employee" will hereafter be used interchangeably with the word "employe," which is the spelling utilized in the Plaintiff's contract entitled "Professional Employe's Contract," and in the Pennsylvania Public School Code.

**3.** On June 11, 1979, the Plaintiff executed a Professional Employe's Contract with the School District, the terms of which stated "[t]his contract is subject to the provisions of the Public School Code of 1949 and the amendments thereto." (Defs.' Mem. Law in Supp. Mot. Summ. J., Ex. 5.)

the *Shearer* court's holding as "unless the School District can establish that despite a finding of innocence, the teacher is guilty of some other misconduct specially prohibited by the Code, termination is improper." (Pl.'s Resp. Mot. Summ. J. at 4.) Here, however, unlike *Shearer*, Mr. McKnight never appealed his discharge to the Secretary of Education. Thus, there is no reversal of his dismissal by the Secretary of Education, and *Shearer* is inapplicable.

The Plaintiff further contends that, pursuant to the required election of remedies, he chose the remedy that allowed him to request that the propriety of his dismissal be determined in accordance with the grievance and arbitration provisions of the CBA between the Board of Education and the PFT. (Pl.'s Resp. Mot. Summ. J. at 6.) He contends that the PFT did not provide him with any findings of their investigation in his case and the PFT's position is that he must provide demonstrative evidence that he was exonerated of the criminal charges against him. (*Id.* at 6–7). Plaintiff states, without support, that he "has reason to believe that the doctrine of election of remedies is operated [sic] as [a] bar to arbitration of grievance contesting teacher's suspension and termination which violates this statute." (*Id.* at 7.) Despite this alleged lack of opportunity to choose his election of remedies, Mr. McKnight states that "[d]uring Plaintiff's meeting with attorney Gregg L. Zeff he was presented with an offer via his union to change his option to appeal from arbitration to a hearing before the School Board. Plaintiff rejected this offer." (*Id.*) Thus, by his own admission, Mr. McKnight was given an opportunity to elect his remedies and admittedly rejected an offer to have a School Board hearing.

■ On March 20, 1998, the School District sent the Plaintiff a notice that it would be recommending that the Board of Education terminate his employment with the School District, effective immediately. The letter specifically states:

> [t]he charges against you are: immorality, persistent and willful violation of or failure to comply with the school laws of this Commonwealth, intemperance, cruelty and other improper conduct such as to constitute cause pursuant to 24 P.S. Section 11–1122 of the Public School Code of 1949, and pursuant to the just cause provision of the collective bargaining agreement.

(Defs.' Mem. Law in Supp. Mot. Summ. J., Ex. 7 at 1.) The School District then listed conduct on which it based its charges. (*Id.*) The correspondence also advised Plaintiff of his right to either: (1) request a hearing with the Board of Education within ten (10) days of his receipt of the letter; or (2) utilize the grievance procedure by informing the union of his intent to follow the CBA grievance procedures applicable to him. (*Id.*, Ex. 7 at 2.) The language in the School District's March 20 correspondence tracks the valid causes for termination listed in the Public School Code. This language was sufficient to place the Plaintiff on notice of his rights in this case. Thus, the Plaintiff's argument that the Defendants breached that agreement by improperly terminating his employment without cause lacks merit and will be dismissed.

The second and third sections of the Plaintiff's Response pertain to the CBA and the Defendants' alleged violations of the CBA. Plaintiff claims that the PFT, without citing any grounds for its actions, declined his request to file a demand for arbitration. The Plaintiff steadfastly argues that because the Public School Code does not specifically use the word "arrest," an arrest cannot be considered a valid cause for termination under the Public School Code. Further, the Plaintiff claims

that termination is improper unless the School District can establish that, despite a finding of innocence, a teacher is guilty of some other misconduct specifically prohibited by the Public School Code. The Plaintiff's final arguments are that (1) the "defendant(s) failed to destroy records deemed unfavorable upon application after eighteen (18) months" in violation of the CBA and in contrast to confirmation by the PFT that all unfavorable records were expunged from his personnel file (Pl.'s Resp. Mot. Summ. J. at 7); and (2) "the defendant(s) with respect to collective bargaining matters failed to follow proper procedure [sic] when investigating incidents of employee misconduct." (*Id.*) Plaintiff, again, neither cites any case law nor provides evidence to support these claims. He also does not respond to the Defendants' arguments contained in their Motion for Summary Judgment.

■ The Plaintiff, after receiving notice from the PFT that it would not file a demand for arbitration on his behalf, took no further action prior to filing his Complaint in this Court. It is clear, therefore, that the Plaintiff did not exhaust his administrative remedies. Even if the Plaintiff could bring his action under the Public School Code as he alleges in his Complaint, the Plaintiff's case would still fail for lack of exhaustion of administrative remedies. 24 Pa.S.A. section 11–1101, *et seq.* Thus, summary judgment is granted to the Defendants for Plaintiff's breach of contract claim.

### B. Notification of COBRA Benefits.

Mr. McKnight avers in paragraph 73 of his Complaint that the Defendants "failed to provide [him] with COBRA election no-

tice and therefore denied [him] his right to temporary continuation of health coverage at a group rate." (Compl., ¶ 73.) The Defendants contend that the School District was not legally obligated to provide Mr. McKnight with COBRA notification because his March 30, 1998 dismissal was based on his November 20, 1997 arrest.[4] Termination for "gross misconduct" is not a "qualifying event" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1001, *et seq.*, which would have required the School District to notify the Plaintiff of his COBRA options. 29 U.S.C. § 1163. The term "gross misconduct" is not defined under ERISA, and case law also does not provide a clear definition of this term. According to the Defendants, the charges against the Plaintiff amounted to "gross misconduct."

The Defendants argue that this Court, in determining whether the Plaintiff's actions constituted "gross misconduct" should follow the analysis used by the United States Court of Appeals for the Third Circuit ("Third Circuit") in *Larsen v. Senate of the Commonwealth of Pennsylvania,* 154 F.3d 82 (3d Cir.1998). In *Larsen,* the appellate court examined case law defining gross misconduct and determined that the conduct of the plaintiff, a former Pennsylvania Supreme Court Justice who "unlawfully procur[ed] controlled substances through the use of his subordinates[,]" was sufficient to allow "a reasonable official ... [to] believe that the acts which resulted in [his] termination amounted to gross misconduct, [and] it was not clearly established that ... [his] termination was a 'qualifying event' triggering his right to coverage."[5] *Larsen,* 154 F.3d at 96.

---

4. The charges against the Plaintiff related to that arrest were rape, involuntary sexual deviate intercourse, terroristic threats, recklessly endangering another person, simple assault, indecent assault, false imprisonment, unlawful restraint and indecent exposure.

5. In *Larsen,* the Third Circuit evaluated "qualifying events" and "gross misconduct" under

The court specifically examined the following cases for their holdings that the conduct in question constituted gross misconduct. *Id.* (reviewing *Burke v. Am. Stores Employee Benefit Plan,* 818 F.Supp. 1131 (N.D.Ill.1993)("holding that the use of improperly procured promotional discount vouchers to obtain free products from employer's retail outlets constituted gross misconduct"); *Adkins v. United Int'l Investigative Servs., Inc.,* 1993 WL 345186 (N.D.Cal.1993)("holding that an employee's acts of leaving his work post unattended and falsifying records to receive additional paychecks constituted gross misconduct"); and *Conery v. Bath Assocs.,* 803 F.Supp. 1388, 1396 (N.D.Ind.1992)("holding that misappropriation of funds constituted gross misconduct")).

The Defendants also cite *Conery v. Bath Associates,* 803 F.Supp. 1388 (N.D.Ind. 1992) and *Collins v. Aggreko, Inc.,* 884 F.Supp. 450 (D.Utah 1995) for their holdings regarding gross misconduct. In *Conery,* a district court held that charges for misappropriating company funds, "if true, would constitute gross misconduct and would relieve ... [the employer] of its COBRA obligations had ... [the employee] been terminated due to his alleged wrongdoing." *Id.* at 1396. The *Conery* employee argued that "proof of 'gross misconduct' should be required to rise to the level of the criminal standard, beyond a reasonable doubt, before COBRA benefits may be terminated," and the evidence presented against him did not rise to that level. *Id.* The *Conery* employer argued, on the other hand, that "the appropriate inquiry should be whether the employer acted on a good faith belief that the employee engaged in gross misconduct." *Id.*

Although the *Conery* court appeared to find the employer's good faith belief argument convincing, it did not decide that issue on the facts of that case since the employee's severance agreement revealed that the employer agreed to allow the employee to resign and retain the right to elect continuation coverage. *Id.* Also cited by the Defendants in this case is *Collins,* 884 F.Supp. 450, wherein the court stated that:

> [g]ross misconduct may be intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest. It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature. Courts have, in appropriate circumstances and in other contexts, found alcohol or drug abuse to meet that standard.

*Collins,* 884 F.Supp. at 454 (citations omitted).

"Gross misconduct" has also been narrowly interpreted to include intentional or reckless disregard for an employer's interests. *See Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834, 838–839 (N.D.Cal.1990). Still another court rejected the *Paris* court's definition of gross misconduct and found that "gross misconduct for purposes of COBRA includes non-work related outrageous behavior if there is a substantial nexus between the behavior and the working environment such that the effects of the intolerable behavior extend into the employment arena." *Zickafoose v. UB Servs.,* 23 F.Supp.2d 652, 657 (S.D.W.Va.1998)(stating gross misconduct is conduct that shocks the conscience).

the Pennsylvania Public Health Service Act, 42 U.S.C. section 300bb–1, *et seq.,* but the Court noted that the same analysis applied to determining "qualifying events" and "gross misconduct" under 29 U.S.C. section 1161(a) of COBRA. *Larsen v. Senate of the Commonwealth of Pennsylvania,* 154 F.3d 82, 96 n. 20 (3d Cir.1998).

Mr. McKnight states, without citing any authority, that

> [a]n arrest does not constitute gross misconduct when there is a lack of a conviction and/or the charges are dismissed resulting from the outcome of the District Attorney's Office investigation. The charge of rape was dismissed for lack of evidence yet is [sic] still appears of [sic] plaintiff's recommended termination letter.

(Pl.'s Resp. Mot. Summ. J. at 13.) The Defendants note that although the Plaintiff, in his Complaint, alleges that an arrest must result in a conviction in order for the employer to conclude that the employee's conduct constituted gross misconduct thereby exempting the employer from providing COBRA notification to the employee, the Plaintiff fails to legally support this allegation. (Defs.' Mem. Law in Supp. Mot. Summ. J. at 4.) Instead, as the Defendants recognize, Plaintiff's reliance in his previously filed pleadings upon *Fenner v. Favorite Brand International*, 25 F.Supp.2d 870 (N.D.Ill.1998), is misplaced because, as they contend, that case was not concerned specifically with a criminal arrest or generally with the concept of gross misconduct, and therefore it is not pertinent to the issue before this Court.[6] (Defs.' Mem. Law in Supp. Mot. Summ. J. at 4.)

The Defendants further note that, after questioning at his deposition, Mr. McKnight revealed that the document that allegedly "proves" a professional employee must be convicted of a crime before he may be terminated for immorality by the School District is his Professional Employe's Contract. (*Id.* at 5)(citing M. McKnight Dep. at 95–96.) A review of the Professional Employe's Contract, however, reveals that the document is silent regarding whether the School District may only terminate an employee for immorality when the employee is convicted of a crime. Thus, the Defendants broadly state that "[t]he plaintiff's contention that the School District may categorize his actions as constituting gross misconduct only by awaiting a criminal conviction is legally erroneous." (Def.'s Mem. Law in Supp. Mot. Summ. J. at 6.)

The Defendants opine that this Court should follow not only the Third Circuit in *Larsen*, but also the reasoning of the court in *Burke v. American Stores Employee Benefit Plan*, 818 F.Supp. 1131 (N.D.Ill. 1993), in which the court concluded that:

> inquiry into the propriety of an employer's determination should be limited to the evidence which was available to the employer at the time of the employee's termination.

---

6. The *Fenner* case involved a terminated employee who claimed that she was not timely notified of her option to elect COBRA coverage after she was terminated. *Fenner v. Favorite Brand International*, 25 F.Supp.2d 870 (N.D.Ill.1998).

The Defendants also claim that the Plaintiff's deposition testimony evidences his lack of foundation for this contention when he states:

> Q: In paragraph 32, you commented or you read the sentence that says: 'A teacher cannot be terminated for immorality or unfitness to teach where he is innocent of wrongdoing.' Right?
> A: Yes.

> Q: Upon what do you base that statement?
> A: Upon when the charges—when there is no conviction or after the District Attorney investigates the witnesses of the defendant and the witnesses of the complainant and determines that there is no case and he drops the charges, nol prossed.
> Q: Can you cite me a rule, a statute, a case that stands for the proposition that a teacher cannot be terminated for immorality or unfitness to teach where he is innocent? By innocent of wrong doing, I guess you mean to apply where he was not convicted of the crime?
> A: No.

(M. McKnight Dep., 10/5/00 at 93–94.)

Under this approach, the court avoids serving as a 'super personnel department' engaged in second-guessing employment decisions based on information which was not available to the employer. Moreover, this approach allows latitude for reliance by an employer upon information which may not fit into the formalities of admissibility under the Federal Rules of Evidence, that the employer should reasonably and appropriately consider in making a business decision—such as termination of an employee.

(Defs.' Mem. Law in Supp. Mot. Summ. J. at 7)(quoting *Burke*, 818 F.Supp. at 1137) (citations omitted). Four months after Mr. McKnight was discharged, the Philadelphia District Attorney's Office nol prossed the criminal charges against him. Because this information was unavailable at the time the decision was made to dismiss Mr. McKnight, the Defendants contend that it should not be considered by this Court in determining whether Mr. McKnight's discharge was appropriate.

Moreover, the Defendants argue that the evidence in this case belies Plaintiff's argument that he was dismissed solely because he was arrested and charged with various criminal offenses. Rather, they contend that the March 20, 1998 dismissal letter from the School District specifically sets forth the School District's underlying rationale and supporting evidence upon which it based the decision to dismiss the Plaintiff. The letter states:

This is to advise you that we shall recommend that the Board of Education terminate your employment with the School District of Philadelphia immediately ... The charges against you are: immorality ... The above charges are based on your conduct set forth below: On December 15, 1997, you attend [sic] a conference with Mr. George Cammarota,

Acting Hearing Officer for Human Resources. Mr. William Robinson, School District Investigator, testified that his investigation indicated that on November 20, 1997 you had been arrested by the Sex Crimes Unit of the Philadelphia Police Department and charged with rape, involuntary deviant sexual intercourse, indecent assault, and indecent exposure. Mr. Robinson testified that the complaint was an 18–year–old student of the Boone High School. You declined to answer any of the questions presented to you at this conference with Mr. Cammarota.

. . . . .

On March 11, 1998, you attended a second conference with Mr. Cammarota. Mr. William Robinson presented Mr. Cammarota with a copy of the student, James Plummer's deposition given on January 8, 1998, in front of the Honorable Lewis [sic] J. Presenza, Judge in the First Judicial District of the Municipal Court of Philadelphia. Mr. Robinson testified that he was present during the student's testimony. Mr. Cammarota asked you several questions following Mr. Robinson's testimony and the submission of the student's deposition. You refused to answer the questions. Your representative states, 'Mr. McKnight denied any allegation of wrongdoing.'

. . . . .

On the basis of the submitted documentation and verbal testimony submitted at this hearing before the Hearing Officer for Human Resources, the administration recommended that you be terminated.

(Defs.' Mem. Law in Supp. Mot. Summ. J., Ex. 7). Based on this correspondence which sets forth reasons for Mr. McKnight's termination and the information available to the Defendant School Dis-

trict when he was terminated, the School District argues that it was never obligated to provide any COBRA notification to Mr. McKnight.

■ In *Lovett–Glenn v. School District of Philadelphia,* No. 99–3019, 2000 WL 190586 (E.D.Pa. Jan.31, 2000), a similar case to the instant case, the plaintiff, a Philadelphia school teacher, was terminated based upon the undisputed fact that he was arrested, convicted and sentenced for solicitation of prostitution. *Id.* at *1. The court found that "there can be no question that conviction for solicitation of prostitution is sufficiently 'immoral' to warrant discharge under the school code and the applicable collective bargaining agreement." *Id.* The differences between the discharge in *Lovett–Glenn* based on a criminal conviction, and the discharge in the instant case based on an arrest are indistinguishable in that the School District acted reasonably in using the information available to it at the time of the discharge to determine whether COBRA notice was required. Accordingly, on the facts of this case, summary judgment is granted in favor of the Defendants for Plaintiff's COBRA benefits notification claim.

### C. Common Law Conspiracy.

In paragraph 82A of his Complaint, the Plaintiff alleges that the parties conspired with each other to harm him. (Compl., ¶ 82A.) Specifically, the Plaintiff alleges the goals of the conspiracy were: (1) to bring about his arrest; (2) to attempt to bring about his conviction; (3) to bring about his improper suspension and termination; (4) to deny his "civil and criminal liability;" (5) to induce him to change his option of appeal from arbitration to a hearing before the School Board Hearing Officer; and (6) to deny him the right to labor arbitration. (*Id.*) The Defendants

contend that a review of the evidence, including Mr. McKnight's deposition and all relevant documentation, reveals a lack of evidence to support this claim.

■ Mr. McKnight, in order to proceed on his conspiracy theory, must show "specific facts showing a 'combination, agreement or understanding among all or between any of the defendants ... to plot, plan or conspire to carry out the alleged chain of events.'" *Avery v. Mitchell,* No. 98–2487, 1999 WL 240339, at *7–*8 (E.D.Pa. Apr.20, 1999) (citations omitted). In response to the Defendants' Motion, Mr. McKnight restates his conspiracy claim from paragraph 82A of his Complaint. These allegations lack identification of particular individuals, times and dates of the alleged conspiracy. In addition, Mr. McKnight presents no evidence inferring that any co-conspirators had either a meeting of the minds or reached an understanding to achieve an objective. *Id.* Thus, the Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's conspiracy claim.

### D. Fifth and Fourteenth Amendment Claims.

Finally, the Defendants move for dismissal of Plaintiff's Fifth and Fourteenth Amendment claims against them because they contend these claims are not independently supported federal substantive claims, but are derived from Plaintiff's perceived violation of the CBA. For support, the Defendants note Plaintiff's deposition testimony:

Q: We know what the nature of the charges are. The remaining charges are COBRA notification, breech [sic] of contract, common law conspiracy, Fifth Amendment and Fourteenth Amendment. That is it.

So I'm asking you, your Fifth Amendment claim is based upon what you feel

were to be violations of the collective bargaining agreement.

A: At the time that I drafted this Complaint, I was under that belief.

　·　　·　　·　　·　　·

■ Mr. Feinberg: ... Is he [Plaintiff] claiming the Fourteenth Amendment is triggered through the collective bargaining agreement?

Mr. Pierre [then Plaintiff's counsel]: That is correct.

Mr. Feinberg: ... That there is no independent basis for any Fourteenth Amendment violation.

Mr. Pierre: Correct.

(M. McKnight Dep. at 131, 146–147.) The Defendants argue that neither claim is independently viable without the Plaintiff's claim for violation of the CBA, therefore both constitutional claims fail since this Court has found that there is no CBA violation. *See supra*, section III.A. The Defendants also contend that Mr. McKnight's attempt to seek redress for any substantive or procedural violations of his Fourteenth Amendment protections also fails as a matter of law. As the Defendants correctly note, in order for the Fourteenth Amendment's substantive and procedural due process protections to be available to Mr. McKnight, he must show that he has a property interest which has been allegedly denied him on arbitrary and irrational grounds. *See Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 678–682 (3d Cir.1991) and *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). According to the Defendants, "tenured public employment is not a fundamental property interest entitled to substantive due process under the Fourteenth Amendment." (Defs.' Mem. Law in Supp. Mot. Summ. J. at 16 n. 5) (citing *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 141–143 (3d Cir.2000) and *Shoemaker v. City of Lock Haven*, 906 F.Supp.

230, 237 (M.D.Pa.1995)). Thus, they claim they are entitled to summary judgment for Plaintiff's Fourteenth Amendment claims against them.

The Plaintiff claims that, under the Fourteenth Amendment, "[t]he Defendant(s) did not comply with procedural (due process) safeguards when Dismissing Plaintiff and therefore violated his right to due process as described in ... [Count III] of his complaint." (Pl.'s Resp. Mot. Summ. J. at 1.) Based upon this alleged noncompliance, the Plaintiff claims that he was "barred from his statutory right to take an appeal to the Superintendent of Public Instruction" and/or a subsequent appeal to the Commonwealth Court. (*Id.*) Further, he states that the Defendants, in scheduling a hearing conducted by a School Hearing Officer, failed to comply with the Pennsylvania Public School Code by denying him his statutory right to either elect a hearing or file a grievance under the CBA.

■ Similarly, Plaintiff's entire response to the Defendants' Motion for Summary Judgment with respect to his Fifth Amendment claim is as follows:

Due process requirements are fully applicable to adjudicative hearings involving substantial property rights before administrative tribunals, and the essential elements of due process are notice and opportunity to be heard and to defend one's self in orderly proceeding [sic] adapted to the nature of the case, before a tribunal having jurisdiction over the matter, and due process also requires opportunity to confront and cross-examine adverse witnesses.

A professional public school employee plaintiff has a property right and expectation of continued employment, and Board of Education must comply with procedural (due process) safeguards

when dismissing him for cause. (U.S.C.A. Const. Amend. 14/24 P.S. 11–1121 through 11–1127) Lewis v. School District of Philadelphia.

Action taken by Defendant(s) against Plaintiff deprived him of life, liberty, or property, without due process of law. Moreover plaintiff was deprived of his right to earn an income.

(Pl.'s Resp. Defs.' Mot. Summ. J. at 13–14.) Mr. McKnight's stated claims are a restatement of the allegations in his pleadings. They are not responsive to the Defendants' Motion and provide no authority for this Court to determine whether his claims are valid. A "[p]laintiff may not rest his response to a summary judgment motion on the bare allegations in his pleadings." *Vaughan v. Pathmark Stores, Inc.,* No. 99–18, 2000 WL 39067, at *4 (E.D.Pa. Jan.19, 2000)(citing *Karas v. Jackson,* 582 F.Supp. 43, 45 (E.D.Pa.1983)). Nonetheless, this Court must consider Mr. McKnight's claim that he was not given a proper hearing and received improper due process.

█ Mr. McKnight claims that he was not presented with a list of charges against him nor advised of his right to be represented by counsel at the hearing. He also claims that he was denied his right to counsel and his right to cross-examine his accuser, and was not permitted to present testimony, witnesses or evidence. Mr. McKnight admits that he attended the hearings, but claims that, following the advice of his attorney who was not present at the hearings with him, he did not answer any questions posed to him by the School Hearing Officer.[7] Although his attorney did not accompany him at these meetings, Mr. McKnight was accompanied by his PFT representative. "The United States Supreme Court has held that 'the State need only provide the opportunity for a hearing before depriving a person of life, liberty or property.'" *Marcolongo v. Sch. Dist. of Phila.,* No. 98–5196, 1999 WL 1011899, at *10 (Nov. 5, 1999), *aff'd,* 2001 WL 363683, 262 F.3d 404 (3d Cir. Mar. 21, 2001)(quoting *Jarmon v. Batory,* No. 94–0824, 1994 WL 313063, at *8 (E.D. Pa. June 29, 1994)(citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)(noting the aggrieved party can "choose for himself whether to appear or default, acquiesce or contest."))). Because the School District provided Mr. McKnight with two hearings before making a termination recommendation to the School Board, Mr. McKnight's due process rights were not violated. In addition, Mr. McKnight appeared at both hearings with his PFT representative, and chose not to respond to any of the allegations against him or present evidence on his behalf. Thus, Mr. McKnight's procedural due process rights were not violated. Because Mr. McKnight neither presents sufficient evidence regarding whether the Defendants' acts deprived him of his Fifth or Fourteenth Amendment protections, nor provides evidence illustrating the existence of issues of material fact for this case to go to a jury, summary judgment is granted to the Defendants for Plaintiff's Fifth and Fourteenth Amendment claims.

## IV. CONCLUSION.

Because the Plaintiff does not present sufficient evidence in response to the Defendants' Motion for Summary Judgment to establish the existence of genuine issues of material fact related to his claims for breach of contract, notification of COBRA benefits, common law conspiracy and Fifth

7. No evidence has been presented which indicates that Mr. McKnight was prohibited or prevented from having counsel present at these hearings.

and Fourteenth Amendment claims, the Defendants' Motion is granted.

An Order follows.

### ORDER

AND NOW, this 18th day of April, 2001, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Dkt. No. 48) is GRANTED. The Clerk of Court is directed to mark this case CLOSED.